Tyler Green, Utah Bar No. 10660
Patrick Strawbridge*
Matt Pociask*
Consovoy McCarthy, PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com
patrick@consovoymccarthy.com
matt@consovoymccarthy.com

*Attorneys for Plaintiff Jonathan Dunn*
*admitted pro hac vice*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| JONATHAN DUNN,<br><br>*Plaintiff,*<br><br>v.<br><br>DELTA AIR LINES, INC.; ROBERT BAN-ISH; KEVIN MILLER; BRIAN CINK; AIR LINE PILOTS ASSOCIATION, INTERNA-TIONAL; RICHARD HARPER; and ADAM BRADLEY,<br><br>*Defendants.* | **PLAINTIFF'S OPPOSITION TO DELTA DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:24-cv-967-HCN-DBP<br><br>FILED UNDER SEAL PURSUANT TO COURT ORDER (DOCKET NO. 29)<br><br>REDACTED FOR PUBLIC FILING<br><br>Hon. Howard C. Nielson, Jr.<br>Hon. Dustin B. Pead |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT ................................................................................................................. 6

I.     DUNN STATES CLAIMS FOR MALICIOUS PROSECUTION AND
       DEFAMATION ................................................................................................. 6

       A.     Defendants Maliciously Prosecuted Dunn. ........................................... 6

              1.     Defendants initiated and continued Dunn's criminal proceedings. ...................... 7

              2.     Defendants lacked probable cause. ........................................... 8

              3.     Defendants acted with an improper purpose. .......................... 9

              4.     The criminal proceedings terminated in Dunn's favor. .......... 10

       B.     Banish and Delta Defamed Dunn. ........................................................ 11

              1.     Banish's false statements are capable of defamatory meaning. ............ 12

              2.     Banish's false statements are not matters of opinion. ............. 14

              3.     Banish's false statements are not covered by the judicial proceedings privilege.
                     ................................................................................................ 16

II.    ATSA DOES NOT IMMUNIZE DEFENDANTS' CONDUCT. ................................... 17

       A.     Banish Is Not Entitled To ATSA Immunity. ....................................... 18

       B.     Miller, Cink, And Delta Are Not Entitled To ATSA Immunity. ................. 19

III.   UTAH'S PUBLIC EXPRESSION PROTECTION ACT DOES NOT APPLY. ............ 20

       A.     UPEPA Does Not Apply In Federal Court. .......................................... 20

       B.     Defendants' UPEPA Motion Fails On The Merits. ............................... 23

CONCLUSION ............................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbas v. Foreign Policy Grp., LLC,*
  783 F.3d 1328 (D.C. Cir. 2015) .................................................................................. 21

*Abdallah v. Am. Airlines Grp., Inc.,*
  2021 WL 12280867 (N.D. Tex. Dec. 6, 2021) ............................................................ 19

*Air Wis. Airlines Corp. v. Hoeper,*
  571 U.S. 237 (2014) ........................................................................................ 17, 18, 19

*Baez v. JetBlue Airways Corp.,*
  793 F.3d 269 (2nd Cir. 2015) ...................................................................................... 19

*Bandary v. Delta Air Lines, Inc.,*
  2024 WL 5339296 (C.D. Cal. June 10, 2024) ............................................................. 19

*Baum v. Gillman,*
  667 P.2d 41 (Utah 1983) .................................................................................. 12, 13, 15

*Brehany v. Nordstrom, Inc.,*
  812 P.2d 49 (Utah 1991) .............................................................................................. 11

*Callioux v. Progressive Ins. Co.,*
  745 P.2d 838 (Utah Ct. App. 1987) ........................................................................... 7, 8

*Caranchini v. Peck,*
  355 F.Supp.3d 1052 (D. Kan. 2018) ........................................................................... 22

*Carbone v. Cable News Network, Inc.,*
  910 F.3d 1345 (11th Cir. 2018) ................................................................................... 21

*Cincinnati Ins. Co. v. AMSCO Windows,*
  921 F.Supp.2d 1226 (D. Utah 2013) ........................................................................... 22

*Columbare v. Sw. Airlines, Co.,*
  2023 WL 406439 (N.D. Tex. Jan. 10, 2023) ............................................................... 17

*Cox v. Hatch,*
  761 P.2d 556 (Utah 1988) ...................................................................................... 12, 14

*Croomer v. Donald Trump for President, Inc.,*
  552 P.3d 562 (Colo. App. 2024) .................................................................................. 14

*CSMN Investments, LLC v. Cordillera Metro. Dist.,*
  956 F.3d 1276 (10th Cir. 2020) ................................................................................... 20

*Erie R. Co. v. Tompkins,*
  304 U.S. 64 (1938) ....................................................................................................... 20

*Gasperini v. Ctr. for Humans., Inc.,*
  518 U.S. 415 (1996) ..................................................................................................... 20

*Godin v. Schencks,*
  629 F.3d 79 (1st Cir. 2010) ......................................................................................... 21

*Gray v. St. Martin's Press, Inc.*,
221 F.3d 243 (1st Cir. 2000) ................................................................................................... 15

*Hansen v. Delta Airlines*,
2004 WL 524686 (N.D. Ill. Mar. 17, 2004) ............................................................................ 17

*Hodges v. Gibson Prods. Co.*,
811 P.2d 151 (Utah 1991) ...................................................................................... 6, 7, 8, 9, 10

*Hogan v. Winder*,
762 F.3d 1096 (10th Cir. 2014) .................................................................................... 11, 12, 13

*Jiricko v. Frankenburg Jensen L. Firm*,
2017 WL 1131902 (D. Utah Feb. 23, 2017) ........................................................................... 16

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
885 F.3d 659 (10th Cir. 2018) ........................................................................................... 21, 22

*McDonald v. Smith*,
472 U.S. 479 (1985) ................................................................................................................. 20

*Merrifield v. Bd. of Cnty. Comm'rs*,
654 F.3d 1073 (10th Cir. 2011) ............................................................................................... 20

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) ............................................................................................................... 14, 15

*Moss v. Parr Waddoups Brown Gee & Loveless*,
285 P.3d 1157 (Utah 2012) ............................................................................................... 11, 16

*Neff v. Neff*,
247 P.3d 380 (Utah 2011) ................................................................................................... 7, 10

*Peterson v. XPO Logistics, Inc.*,
812 F. App'x 754 (10th Cir. 2020) .......................................................................................... 16

*Pettit v. Maxwell*,
509 S.W.3d 542 (Tex. Ct. App. 2016) ....................................................................................... 9

*Puttuck v. Gendron*,
199 P.3d 971 (Utah Ct. App. 2008) ......................................................................................... 10

*Robison v. 7PN, LLC*,
569 F.Supp.3d 1175 (D. Utah 2021) .......................................................................................... 6

*Sexton v. Poulsen & Skousen P.C.*,
372 F.Supp.3d 1307 (D. Utah 2019) .................................................................................... 7, 11

*Smith-Hunter v. Harvey*,
734 N.E.2d 750 (N.Y. 2000) .................................................................................................... 10

*Sorensen v. Polukoff*,
2020 WL 1692815 (D. Utah Apr. 7, 2020) ............................................................................. 16

*Turner v. Wells*,
879 F.3d 1254 (11th Cir. 2018) ............................................................................................... 15

*UHS of Provo Canyon, Inc., v. Bliss,*
2024 WL 4279243 (D. Utah Sept. 24, 2024) ..................................................... 22

*United States v. Gaudin,*
515 U.S. 506 (1995) ........................................................................................ 17

*Utah Physicians for a Healthy Env't, Inc. v. TAP Worldwide, LLC,*
582 F.Supp.3d 881 (D. Utah 2022) ................................................................. 6

*West v. Thomson Newspapers,*
872 P.2d 999 (Utah 1994) ........................................................... 12, 13, 14, 15, 16

**Statutes**

18 U.S.C. §1001 ................................................................................................ 22

49 U.S.C. §44941 ................................................................................... 19, 21, 22

N.M. Stat. Ann. §38-2-9.1 ................................................................................. 24

Utah Code Ann. §78B-25-101 ........................................................................... 23

Utah Code Ann. §78B-25-105 ........................................................................... 25

Utah Code Ann. §78B-25-107 ............................................................... 23, 25, 26

Utah Code Ann. §78B-25-108 ........................................................................... 25

Utah Code Ann. §78B-25-109 ........................................................................... 25

Utah Code Ann. §78B-25-110 ........................................................................... 25

**Other Authorities**

Restatement (Second) of Torts ............................................................. 7, 8, 9, 10, 11

## **INTRODUCTION**

Robert Banish falsely accused Jonathan Dunn of a felony that carries a potential life sentence. Banish knew that Dunn's comments were a joke, albeit one that Dunn recognizes was inappropriate.[1] Banish behaved as if he considered the comments a joke when they were made, and his actions once the flight landed were inconsistent with his later claim that Dunn's comments were a genuine threat. Banish even told his employer and the FBI *on a recorded line* shortly thereafter that Dunn was joking. Had Banish stuck to the truth, Dunn never would have been indicted.

But Banish did not stick to the truth. In his first interview with investigators, he told the prosecutor, falsely, that he didn't know if Dunn was joking and that he felt intimidated. When that interview did not result in charges, Banish changed his story again and falsely told investigators Dunn was *not* joking and that he *attempted to take over the cockpit with his firearm*. Banish's outlandish accusations caused Dunn to be indicted for interfering with a flight crew using a deadly weapon and convinced the government to proceed to trial. The government dropped the charge only after Dunn's criminal defense attorney uncovered the FBI recording, where Banish admitted Dunn was joking and acknowledged that no serious incident had occurred that day.

These are paradigmatic facts of malicious prosecution and defamation. Defendants argue that Dunn's case should be dismissed by ignoring his well-pleaded allegations and by reimagining the law. They half-quote a Utah Court of Appeals opinion to falsely argue that malicious prosecution requires the plaintiff to have been acquitted, but they leave out the words explaining the rule doesn't apply here. They invoke various immunities without acknowledging those immunities do not apply when a defendant acts in bad faith. In their fervor to dismiss Dunn's case, Defendants even contradict the contents of their own exhibits. *Compare, e.g., Defs.' Mot. to Dismiss*, Dkt. 19 at 1 ("MTD") (claiming

---

[1] At every stage of the investigation, Dunn has taken responsibility for his comments. Although he recognizes his joke was inappropriate, he vigorously disputes Defendants' characterization of the words he used.

Dunn's firearm "was visible to Captain Banish" when Dunn made the comments) *with id.* Ex. A at 56 (Q: "███████████████████████" A: "███"). Defendants engaged in a campaign of lies that derailed Dunn's life and destroyed his reputation. They now seek to avoid responsibility for their egregious misconduct by moving to dismiss Dunn's complaint on spurious grounds. The Court should deny their motion in its entirety.

## **BACKGROUND**

On August 22, 2022, Banish and Dunn co-piloted a Delta Air Lines flight from Atlanta to Salt Lake City. Compl. ¶28. Near Denver, a passenger experienced a medical issue. *Id.* ¶29. As required by Delta policy, Banish contacted Delta's dispatch service to consult with the on-call physician. *Id.* Dispatch advised Banish that the passenger was "███" and that the medical issue did not warrant a diverted landing. MTD Ex. A at 48. Banish, Dunn, and the dispatch team determined that no emergency existed and the plane would land as scheduled in Salt Lake City. Compl. ¶¶29, 32; *see also* MTD Ex. A at 49 ("█████" to continue to Salt Lake City; "██████" not to divert).

The flight continued for thirty minutes. Compl. ¶32. During that time, there was no further discussion of diverting, and the medical situation remained stable. *Id.* At some point, Banish gestured at a small airport near Grand Junction, Colorado, and commented "we could go there." *Id.* ¶30. Dunn interpreted Banish's comment as a joke about per diem, rather than a directive to make contingency plans for a possible emergency landing. *Id.* ¶31. Dunn joked in response that the pair should arm wrestle to decide where to land. *Id.* ¶35. Banish responded that as captain, he had 51 of the 100 votes on the airplane. *Id.* ¶35. Dunn commented back that the rounds in his service pistol were sufficient to veto Banish's votes. *Id.* Banish did not appreciate Dunn's remark and told him that such jokes were inappropriate, which Dunn acknowledged, but Banish knew that Dunn was joking. *Id.* ¶¶38-40.

The flight ended normally. *Id.* ¶¶40-41. Banish did not preserve the cockpit voice recorder, as Delta policy and federal law requires if any "incident" or "irregularity" occurs that threatens crew

safety. *Id.* ¶¶43-47. Dunn offered to greet the passengers as they deplaned so Banish could get home sooner. *Id.* ¶42. Banish agreed and left the passengers with Dunn. *Id.* Banish made his supervisors Kevin Miller and Brian Cink aware of Dunn's comments, and neither person directed Banish or anyone else to preserve the cockpit voice recorder. *Id.* ¶¶51-53.

Three days later, at the encouragement of Miller or Cink, Banish reported Dunn's comments to the FBI. *Id.* ¶¶61, 126f. Banish told the intake officer that Dunn "essentially joked"[2] about shooting him, but he was making the report in case "███████████████████" involving Dunn in the future. *Id.* ¶61; *see* MTD Ex. B (transcript). Soon after the FBI call, Miller and Cink interviewed Dunn at Delta's Chief Pilot's Office. *Id.* ¶¶64-65. Cink and Miller used the interview to elicit incriminating statements for a possible prosecution of Dunn. *Id.* ¶¶73, 126f.

On December 15, 2022, four months after Dunn's comments, Banish sat for an interview with federal investigators. Compl. ¶89; *see* MTD Ex. A (transcript). In the interview, Banish stated that he "did not know" whether Dunn was joking, Compl. ¶89, and claimed that Dunn "███████" him. MTD Ex. A at 79. The prosecutor asked a series of specific questions about how Dunn's comments affected Banish, and Banish repeatedly stated that they did not interfere with his duties "in any way." Compl. ¶89; *see* MTD Ex. A at 79 (Q: "█████████████████████████████████████" A: "████████"); *id.* at 81 ("██████████████████████████████████████"). The prosecutor asked whether Dunn's comments might have "████████████████████" that kept Banish from making "███████████████████" *Id.* at 81. Banish said he "███████████████████████████ ████████████████" and he responded "███" *Id.* at 82. At the end of the interview, the prosecutor discussed

---

[2] Banish often uses "essentially" as a filler word without substantive meaning. *See, e.g.,* MTD Ex. A at 18 ("███████████████████████████"); *id.* at 61 ("████████████████████████ ████████████"); *id.* at 66 ("████████████████████████████████████████"); *id.* at 67 ("████████████████████████████████████"); *id.* at 67-68 ("███████████████████████████████████████████████"); Ex. B at 3 ("█████████████████████████████████████") (emphases added).

potential charges. *Id.* at 93, 95. He said he could probably charge Dunn with assault, but the "[redacted]

[redacted]" for interference with a flight crew—the crime Dunn was eventually charged

with—because there was no evidence of Dunn "[redacted]" *Id.* at 95-96.

The December 2022 interview did not result in criminal charges against Dunn. Sometime after

that interview, however, Banish gave another statement to investigators, this time claiming that Dunn

was *not* joking and that Dunn *did* interfere with his duties. Compl. ¶¶90, 101.[3] On October 18, 2023,

more than a year after the incident, the government indicted Dunn for felony interference with a flight

crew using a deadly weapon. *Id.* ¶91. In Dunn's detention memorandum, the government stated that

Banish was "concerned if [he] diverted to Grand Junction, [Dunn] would use his weapon to relieve

[Banish] of command." *Id.* ¶96. To support the memorandum, the government included a statement

that Miller and Cink elicited from Dunn in the Delta interview with misleading questions. *Id.* ¶74.

Meanwhile, Banish, Miller, and another Delta pilot exchanged text messages to plan a "party"

for Dunn's upcoming arraignment, with "popcorn ready" and "lunch/drink/apres/whatever after-

ward." *Id.* ¶95. After Dunn pleaded not guilty, Miller texted the group that he was "happy to read that

the judge was unmoved," and that the trial would be "quite entertaining." *Id.* ¶99. The other Delta

pilot mocked Dunn and mused whether "cupcake Dunn" had "suffered irreversible self-image dam-

age," to which Banish responded, "lol. Exactly." *Id.* ¶99.

After receiving a transcript of the December 2022 interview in discovery, Dunn's criminal

defense attorney met with the United States Attorney to encourage her office to drop the case. *Id.*

¶100. Not knowing Banish had changed his story, Dunn's attorney pointed out that "the government

could not possibly prove … interference" because Banish repeatedly disclaimed Dunn's comments

---

[3] The timeline of when Banish first told investigators that Dunn interfered with his duties is not yet clear. Evidence of Banish's statement appears in the government's December 29, 2023, detention memorandum. Compl. ¶96. Banish made another statement alleging Dunn's interference on January 29, 2024. *Id.* ¶101; *see* MTD Ex. D at 4. Based on the timing of Dunn's indictment, however, Banish likely made this statement again sometime before October 18, 2023. Compl. ¶¶90-91.

had any effect on his behavior. *Id.* ¶100. Rather than drop the case, however, prosecutors called Banish for a second interview on January 29, 2024, to determine whether he would testify to the facts necessary for a conviction. *Id.* ¶101; *see* MTD Ex. D (official summary).

In the second interview, Banish confirmed the changed story he first told investigators sometime after the December 2022 interview. He stated that "Dunn's comments affected his decision making because he feared he would have to decide between diverting or getting shot." Compl. ¶101. He also stated that he "██████████████████████████████████████████" MTD Ex. D at 4. On the apparent strength of these false statements, the government decided to proceed with trial and refused Dunn the opportunity to plead to a lesser offense. Compl. ¶106.

Cink participated in the prosecution as a fact and expert witness for the government. *Id.* ¶103. As an expert, Cink offered to testify that diverting to Grand Junction would have been rational and consistent with Delta policy, in plain contradiction of the policy's ordinary understanding. *Id.*

Shortly before trial, Dunn's criminal defense attorney obtained the audio recording of Banish's FBI report, where Banish admitted Dunn was joking and acknowledged that no "████████████" had occurred. *Id.* ¶107; *see* MTD Ex. B at 2-3. Dunn's attorney provided the recording to prosecutors, and the government moved to dismiss Dunn's indictment four days later. Compl. ¶¶108-109. In the motion, the government stated that it "came into possession of previously unknown evidence" and "no longer believes it can prove all elements of the charged offense beyond a reasonable doubt." *Id.* This Court granted the government's motion and dismissed the indictment. *Id.* ¶110.

Dunn filed this suit against Banish, Miller, Cink, and Delta Air Lines (Delta Defendants) to recover damages and for other relief resulting from their false accusations and unlawful conduct. Dunn brings claims for malicious prosecution against all Delta Defendants and for defamation against Banish and Delta. Defendants moved to dismiss Dunn's complaint for failure to state a claim. For the reasons below, the Court should deny that motion.

<u>**ARGUMENT**</u>

Dunn's well-pleaded allegations state claims for malicious prosecution and defamation. The Aviation and Transportation Security Act does not immunize Defendants' bad-faith conduct, and Utah's Uniform Public Expression Protection Act does not apply in federal court.

## I.     DUNN STATES CLAIMS FOR MALICIOUS PROSECUTION AND DEFAMATION.

"In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, the court accepts all facts pleaded by the nonmoving party as true and makes all reasonable inferences from the pleadings in favor of the nonmoving party." *Utah Physicians for a Healthy Env't, Inc. v. TAP Worldwide, LLC*, 582 F.Supp.3d 881, 884 (D. Utah 2022). The plaintiff "'must plead facts sufficient to state a claim that is plausible on its face.'" *Robison v. 7PN, LLC*, 569 F.Supp.3d 1175, 1179 (D. Utah 2021). "A claim is facially plausible when the complaint contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* "The court's function is 'not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Id.*

### A.  Defendants Maliciously Prosecuted Dunn.

Malicious prosecution under Utah law has four elements: "(1) defendants initiated or procured the initiation of criminal proceedings against an innocent plaintiff; (2) defendants did not have probable cause to initiate the prosecution; (3) defendants initiated the proceedings primarily for a purpose other than that of bringing an offender to justice; and (4) the proceedings terminated in favor of the accused." *Hodges v. Gibson Prods. Co.*, 811 P.2d 151, 156 (Utah 1991). Utah courts look to the Second

Restatement of Torts when assessing a malicious prosecution claim. *See, e.g., id.*; *Neff v. Neff*, 247 P.3d 380, 394 (Utah 2011). Defendants meet all four elements.[4]

### 1. Defendants initiated and continued Dunn's criminal proceedings.

A defendant initiates or continues criminal proceedings when he is "'actively instrumental in putting the law in force.'" *Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 843 (Utah Ct. App. 1987). One way to initiate criminal proceedings is by falsely accusing the plaintiff of a crime. *Hodges*, 811 P.2d at 157-58; Restatement (Second) of Torts §654. A defendant continues criminal proceedings by taking "an active part in pressing the proceedings after he has discovered that there is no probable cause for them." *Id.* §655 cmt. b. A person who initiates criminal proceedings in good faith is liable for malicious prosecution if he continues the proceedings after learning they lack probable cause. *Id.*

Banish initiated and continued criminal proceedings against Dunn. He was the only witness to Dunn's comments, and "[n]o prosecution could have occurred without Banish's false accusation." Compl. ¶126a; *see Hodges*, 811 P.2d at 157-58. Banish "'pu[t] the law in force,'" first by reporting Dunn's comments to the FBI, and later by falsely stating in the December 2022 interview that he didn't know whether Dunn was joking and that Dunn intimidated him. *Callioux*, 745 P.2d at 843; *see* Compl. ¶¶126b-126e; MTD Ex. A at 79. When Dunn's criminal proceedings stalled after the December 2022 interview, Banish revived them by falsely telling investigators that Dunn's comments "affected his decision making because he feared he would have to decide between diverting or getting shot," Compl. ¶¶90, 101, and that he "████████████████████████████████████████████," MTD Ex. D at 4. Banish's false statements supplied the government with "crucial" evidence it needed to prosecute Dunn. Compl. ¶¶106, 126c-d. And Banish gave those false statements with specific intent

---

[4] Dunn's well-pleaded allegations establish Delta's vicarious liability for malicious prosecution. Compl. ¶132. Defendants do not argue otherwise in their motion, and arguments first raised in a reply brief are waived. *Sexton v. Poulsen & Skousen P.C.*, 372 F.Supp.3d 1307, 1318 n.9 (D. Utah 2019).

to advance Dunn's criminal proceedings. *Id.* ¶126d. These actions were "'actively instrumental'" in initiating and continuing Dunn's prosecution. *Callioux*, 745 P.2d at 843; *Hodges*, 811 P.2d at 157.

Miller and Cink also initiated and continued Dunn's criminal proceedings. Both knew Dunn had not attempted to take over the aircraft, yet they played active roles in Dunn's prosecution. Either Miller or Cink "encouraged Banish to call the FBI." Compl. ¶126f; *see* Restatement (Second) of Torts §653 cmt. d. ("[O]ne who procures a third person to institute criminal proceedings … is [equally] liable"). Miller and Cink used their role as Dunn's supervisors to elicit incriminating statements from him, which the government later used against Dunn. Compl. ¶¶74, 126f. And Cink offered to give false expert testimony about Delta's policy on emergency landings to bolster the government's case. *Id.* ¶¶103-106, 126g; *see* Restatement (Second) of Torts §655 cmt. c. (witnesses are liable for malicious prosecution if they take an "active" role in furthering the prosecution); *cf.* Restatement (Second) of Torts §653 cmt. g. (furnishing knowingly false information to a prosecutor counts as initiation).

Defendants argue that Dunn failed to plead initiation or continuation because he did not "demonstrate that the prosecutor's discretion was controlled by the Delta Defendants." MTD 32. They cite section 653 of the Second Restatement for support, but that provision expressly favors Dunn. Where, as here, "the information is known by the giver to be false, an intelligent exercise of the [prosecutor's] discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information." Restatement (Second) of Torts §653 cmt. g. Because Banish and Cink knew their statements were false, any true exercise of the prosecutor's discretion was impossible. *Id.*

### 2. Defendants lacked probable cause.

To have probable cause, the "accuser must have a reasonable basis for believing the accusation and must also subjectively believe the accusation to be true." *Hodges*, 811 P.2d at 158. There is no probable cause for initiating or continuing criminal proceedings "if [the accuser] does not believe that

the accused was guilty of the crime." Restatement (Second) of Torts §662 cmt. c. The probable cause inquiry focuses on the conduct of "'the person responsible for initiating [or continuing] the action,'" not the prosecutor's decision to file charges. *Hodges*, 811 P.2d at 158; *see, e.g.*, *Pettit v. Maxwell*, 509 S.W.3d 542, 550-51 (Tex. Ct. App. 2016) (collecting cases) (whether the prosecutor "presented evidence to a grand jury which returned an indictment after its investigation" is not "relevant" to whether the accuser had probable cause).

Banish, Miller, and Cink lacked probable cause because they knew Banish's accusation was false. Compl. ¶¶128a-128c. Defendants again rely on prosecutorial discretion to argue otherwise, *see* MTD 34, but that reliance is misplaced, *see Hodges*, 811 P.2d at 158; *Pettit*, 509 S.W.3d at 551. Even if prosecutorial discretion *could* be relevant to probable cause, any discretion was nullified here by Banish's and Cink's knowingly false statements. *See* Restatement (Second) of Torts §653 cmt. g.

### 3. Defendants acted with an improper purpose.

"The only proper purpose for initiating criminal proceedings is to bring an offender to justice." *Hodges*, 811 P.2d at 161. "If the person initiating [or continuing] criminal proceedings does not himself believe in the guilt of the accused, it is plain that he cannot have a proper purpose." Restatement (Second) of Torts §668 cmt. e.; *see also id.* §669 (lack of probable cause is evidence of improper purpose if the defendant "did not believe in the guilt of the accused"). Defendants did not act with a proper purpose because they did not believe Dunn threatened Banish or interfered with his duties. Compl. ¶¶128a-128c. The lack of seriousness with which Defendants treated Banish's outlandish accusation is further evidence they didn't believe it. *See id.* ¶43 (not preserving cockpit recording); *id.* ¶95 (planning a "party" for Dunn's arraignment with "popcorn ready" and "lunch/drink/apres/whatever afterward"); *id.* ¶99 (mocking Dunn's "self-image damage"). These are not statements of people who genuinely believe their former colleague attempted to hijack an aircraft.

#### 4.   The criminal proceedings terminated in Dunn's favor.

Utah follows the "Restatement approach" to determine whether criminal proceedings terminated in the plaintiff's favor. *Neff*, 247 P.3d at 394. Proceedings terminate favorably by, among other things, "the formal abandonment [of charges] by the public prosecutor." Restatement (Second) of Torts §659(c). That includes the prosecutor's decision to end the proceedings "because … a conviction has … become impossible or improbable." §660(b) cmt. d. A "prosecutor may formally abandon the prosecution … by a motion to dismiss the complaint." §659(c) cmt. e.; *see Hodges*, 811 P.2d at 161 (finding favorable termination where "the action … was dismissed on the motion of the prosecuting attorney"). Dismissal with prejudice is not required for favorable termination. *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 754 (N.Y. 2000) (collecting cases). Here, the government moved to dismiss Dunn's indictment because it "'no longer believe[d] it can prove all elements of the charged offense beyond a reasonable doubt.'" Compl. ¶131. The criminal proceedings terminated in Dunn's favor when this Court granted that motion. *Hodges*, 811 P.2d at 161; Restatement (Second) of Torts §§659, 660.

Defendants assert that Dunn cannot show favorable termination "as a matter of law" and quote *Puttuck v. Gendron*, 199 P.3d 971 (Utah Ct. App. 2008)—a case about wrongful use of *civil* proceedings—for the proposition that "'termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution.'" MTD 35-36. But Defendants stop their quote halfway. The quoted sentence goes on to say that termination "other than by acquittal" is insufficient to sustain an action for malicious prosecution "if … the charge is withdrawn or the prosecution abandoned *pursuant to an agreement of compromise with the accused*…." *Puttuck,* 199 P.3d at 975 (quoting Restatement (Second) of Torts §660) (ellipses in original; emphasis added). Here, there was no agreement between prosecutors and Dunn.

Compl. ¶106. Defendants' selective omission in relating the favorable termination standard is emblematic of their willingness to ignore legal precision to further their personal vendetta against Dunn.[5]

### B. Banish and Delta Defamed Dunn.

Defamation under Utah law has four elements: "(1) that the defendants published the statements; (2) that the statements were false, defamatory, and not subject to any privilege; (3) that the statements were published with the requisite degree of fault; and (4) that their publication resulted in damage to the plaintiff." *Hogan v. Winder*, 762 F.3d 1096, 1105 (10th Cir. 2014) (cleaned up). Dunn's well-pleaded allegations meet these elements.[6]

Banish made at least five defamatory statements about Dunn. In his first interview with investigators, Banish falsely stated that he wasn't sure whether Dunn was joking and that Dunn's comments intimidated him. Compl. ¶141a; MTD Ex. A at 79. Sometime later, Banish falsely stated that he did not think Dunn was joking. Compl. ¶141b. In his second interview, Banish falsely stated that he "█ ███████████████████████████████████████████," MTD Ex. D at 4, and that "Dunn's comments affected his decision making because he feared he would have to decide between diverting or getting shot," Compl. ¶¶101, 141c.

Defendants do not dispute that Banish published these statements, that Banish acted with the requisite degree of fault, or that the statements injure Dunn. Nor do they assert Banish's statements were true. *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991) ("truth is an absolute defense to

---

[5] Defendants briefly argue that Utah's judicial proceedings privilege bars Dunn's malicious prosecution claim. MTD 32 n.9. As explained below, the judicial proceedings privilege does not shield liability for malicious prosecution and other bad-faith conduct. *Infra* 16; *see Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1166 (Utah 2012); Restatement (Second) of Torts §587 cmt. a.

[6] Dunn's well-pleaded allegations establish Delta's vicarious liability for defamation. Compl. ¶145. Defendants do not argue otherwise in their motion, and arguments first raised in a reply brief are waived. *Sexton*, 372 F.Supp.3d at 1318 n.9.

an action for defamation"). They attack Dunn's defamation claims only on the second element, arguing that Banish's statements are not capable of defamatory meaning, are matters of opinion, or are protected by the judicial proceedings privilege. MTD 24. These arguments fail.

### 1. Banish's false statements are capable of defamatory meaning.

Utah law gives a "broad definition of what may be considered defamatory." *West v. Thomson Newspapers*, 872 P.2d 999, 1008 (Utah 1994). A statement is defamatory if it "impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." *Id.* The "guiding principle" in determining whether a statement is capable of defamatory meaning is its "tendency to injure a reputation in the eyes of its audience." *Id.* Utah recognizes some statements as defamatory "per se," including "words [that] charge criminal conduct." *Baum v. Gillman*, 667 P.2d 41, 42-43 (Utah 1983); *see also Hogan*, 762 F.3d at 1107 ("False accusations of criminal conduct can be defamatory, of course").

Utah courts assess wholistically "whether a statement is capable of sustaining a defamatory meaning" and "carefully examine the context in which the statement was made." *West*, 872 P.2d at 1009. Relevant context includes "(1) the words themselves and their implications; (2) the entire article or message; (3) the events or disputes that gave rise to the article [or message]; and (4) the likely effect on the reasonable reader." *Hogan*, 762 F.3d at 1106; *see also West*, 872 P.2d at 1011 & n.18 (discussing "defamation-by-implication" where "'words innocent on their face may, when explained in context, convey a defamatory meaning'"). So long as a statement or its implications "might be considered defamatory by a reasonable person," a court cannot resolve the issue of defamatory meaning on a motion to dismiss. *Cox v. Hatch*, 761 P.2d 556, 561 (Utah 1988).

Banish's false statements are capable of defamatory meaning because they accused Dunn of a crime, both directly and by implication. *Baum*, 667 P.2d at 42-43. After the December 2022 interview, Banish told investigators he did not think Dunn was joking and that Dunn's comments interfered with

his decision making. Compl. ¶¶90, 101. Banish also told investigators he "████████████

████████████████████████████" MTD Ex. D at 4. These false statements are defamatory

per se because they expressly accused Dunn of a felony that carries a maximum term of life imprison-

ment. *Baum*, 667 P.2d at 42-43.

Banish's statements in the December 2022 interview—that he didn't know Dunn was joking

and that Dunn intimidated him—are also defamatory, at least by implication. *West*, 872 P.2d at 1011.

Banish gave those false statements to a prosecutor who Banish knew was considering charging Dunn.

Compl. ¶¶126c-126d; *see* MTD Ex. A at 79, 95. Given "the events or disputes that gave rise" to Ban-

ish's interview, *Hogan*, 762 F.3d at 1106, stating falsely that he didn't know Dunn was joking effectively

accused Dunn of threatening Banish with a gun. The prosecutor understood Banish's statement in

exactly that way. *See id.* (context includes a statement's "likely effect on the reasonable [listener]").

Based on Banish's failure to admit what he'd previously told the FBI—that Dunn was joking—and

his false claim that Dunn's comments intimidated him, the prosecutor concluded he could likely

charge Dunn with assault. MTD Ex. A at 96-97 ("████████████████████████████████████

████████").

Defendants' counterarguments address only a subset of Banish's defamatory statements and

lack merit. They cite no authority for their proposition that a person cannot make defamatory state-

ments by "claiming a lack of knowledge." MTD 27. Whether disclaiming knowledge is defamatory

depends on context. *West*, 872 P.2d at 1011. For example, if there are only two possible suspects of a

crime, one suspect claiming not to know about the crime implicitly accuses the other of it. Here,

Banish's statement that he didn't know whether Dunn was joking implied Dunn's conduct was at least

ambiguous enough to be threatening. And he bolstered that implication by falsely claiming Dunn's

comments intimidated him. Those false statements are defamatory because they accused Dunn of a

crime.

Defendants also argue that Banish's false claims about whether Dunn was joking cannot be defamatory because Dunn's comments would equally impact his reputation either way. MTD 27. But a statement is actionable if a reasonable person could infer defamatory meaning from it. *Cox*, 761 P.2d at 561. And a reasonable person assessing Dunn's "honesty, integrity, virtue, or reputation" at least "*might*" consider it important to know whether Dunn was joking or instead attempting to take over the airplane. *Id.* (emphasis added).

### 2. Banish's false statements are not matters of opinion.

There is no "wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). An opinion gives rise to defamation liability if it "states or implies facts that are false and defamatory." *West*, 872 P.3d at 1015. Expressions of opinion "often imply an assertion of objective fact." *Milkovich*, 497 U.S. at 18. And "'simply couching a factual assertion in terms of opinion'—for example, by prefacing the statement with a qualification like 'I think' or 'I believe'—does not itself insulate the speaker from liability." *Croomer v. Donald Trump for President, Inc.*, 552 P.3d 562, 588 (Colo. App. 2024) (quoting *Milkovich*, 497 U.S. at 19).

Utah follows a "totality of circumstances" approach to distinguishing statements of opinion from statements of fact. *West*, 872 P.3d at 1018. Courts consider, among other things, "(i) the common usage or meaning of the words used; (ii) whether the statement is capable of being objectively verified as true or false; (iii) the full context of the statement … in which the defamatory statement is made; and (iv) the broader setting in which the statement appears." *Id.*

Banish's false statements are actionable. In the January 2024 interview, Banish stated he "█████████████████████████████████████████████████████," MTD Ex. D at 4, and that Dunn's comments "affected his decision making because he feared he would have to decide between diverting or getting shot," Compl. ¶101. Those claims are objectively verifiable, and the government would have to prove them to a jury to convict Dunn. *West*, 872 P.3d at 1018. It doesn't matter that

Banish prefaced his statement with *he believes* Dunn tried to take over the airplane. *Milkovich*, 497 U.S. at 18-19; *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000) ("to say 'I think' is not enough to turn fact into opinion"). In expressing that belief, Banish falsely implied the existence of facts to support that outlandish claim. *Gray*, 221 F.3d at 248.

Banish also defamed Dunn when he stated in the December 2022 interview that he didn't know Dunn was joking and that Dunn's comments intimidated him. Compl. ¶89; MTD Ex. A at 79. Those statements are actionable because a person's knowledge base and emotional state are "objective fact[s]" capable of being proven true or false, *Gray*, 221 F.3d at 249, and because Banish's claimed lack of knowledge implied Dunn committed a crime, *Baum*, 667 P.2d at 42-43.

Defendants' counterargument addresses only Banish's statements about whether Dunn was joking, and it again lacks merit. Defendants argue that "Banish was not in Dunn's head" and he couldn't "know for certain" whether Dunn was joking. MTD 29; *see also id.* (Banish "could not know whether Dunn was joking" because "they did not end up having to divert to Grand Junction"). But whether a joke occurred is a fact capable of objective verification, even if Banish later claimed not to be certain about it. *West*, 872 P.3d at 1018; *Gray*, 221 F.3d at 249. Banish told the FBI that he understood Dunn's comments as a joke, and a jury could find that Banish affirmatively misled the prosecutor when he later changed his story. Moreover, Banish's statements that he didn't know whether Dunn was joking falsely implied Dunn's conduct was at least ambiguous enough to constitute a criminal threat. *Baum*, 667 P.2d at 42-43; *see* MTD Ex. A at 96.

Defendants' reliance on the Eleventh Circuit's decision in *Turner v. Wells*, 879 F.3d 1254 (2018), is misplaced. There, the plaintiff brought a defamation claim against an investigator who categorized his behavior as "homophobic taunting" rather than as a joke. *Id.* at 1264. The court held that the investigator's choice of label was "subjective and not readily capable of being proven true or false," and thus could not be defamatory. *Id.* at 1270. Here, however, the label Banish used to describe Dunn's

comments is not the issue. *See West*, 872 P.2d at 1018. What matters is that Banish falsely stated and implied that Dunn threatened him with a deadly weapon, when he knew Dunn did no such thing. Those statements accused Dunn of a crime and are defamatory.

### 3. Banish's false statements are not covered by the judicial proceedings privilege.

Utah's judicial proceedings privilege "'is intended to promote the integrity of the adjudicatory proceeding and its truth finding process.'" *Moss*, 285 P.3d at 1165. In light of that purpose, the privilege does not apply if a person "committed fraud or otherwise acted in bad faith" in the proceeding. *Id.* at 1166; *see also Peterson v. XPO Logistics, Inc.*, 812 F. App'x 754, 758 (10th Cir. 2020) (the *Moss* exception "applies not only to attorneys, but also to parties"). To overcome the judicial proceedings privilege, "complaining parties need only allege facts showing bad faith." *Peterson*, 812 F. App'x at 757; *see also Sorensen v. Polukoff*, 2020 WL 1692815, *3-4 (D. Utah Apr. 7, 2020) (applying *Moss* exception and denying motion to dismiss because "Plaintiff has alleged that Defendants engaged in fraud and/or acted in bad faith"); *Jiricko v. Frankenburg Jensen L. Firm*, 2017 WL 1131902, at *5 (D. Utah Feb. 23, 2017).

Defendants do not acknowledge the *Moss* exception to the privilege or argue Dunn failed to plead Banish acted in bad faith. Nor could they. Dunn's well-pleaded allegations show that Banish knew Dunn was joking, including because Banish did not behave in the wake of Dunn's comments in a manner consistent with someone who had experienced a genuine threat. Compl. ¶¶39-43. He and his co-defendants later traded jokes about Dunn's criminal proceedings ("party" with "popcorn ready"!), inconsistent with any sincere belief that Dunn was guilty of a serious crime. *Id.* ¶¶95, 99. Despite knowing Dunn was joking, Banish told multiple, escalating lies to investigators with specific intent to further Dunn's prosecution. *Id.* ¶¶126c-d, 143. The judicial proceeding privilege does not cover Banish's bad-faith conduct. *Moss*, 285 P.3d at 1166.

## II. ATSA DOES NOT IMMUNIZE DEFENDANTS' CONDUCT.

ATSA grants limited civil immunity to air carriers and their employees for certain "voluntary" disclosures made to an "employee or agent of the Department of Transportation, the Department of Homeland Security, the Department of Justice, any Federal, State, or local law enforcement officer, or any airport or airline security officer." 49 U.S.C. §44941(a). For the immunity to apply, the disclosure must be about a "suspicious transaction relevant to a possible violation" of law relating to air piracy, terrorism, or threats to aircraft and passenger safety. *Id.* Immunity does not apply if the air carrier or employee had "actual knowledge that the disclosure was false, inaccurate, or misleading," or acted with "reckless disregard as to the truth or falsity of that disclosure." *Id.* §44941(b). In other words, ATSA does not "shield airlines from civil liability for disclosures made in bad faith." *Hansen v. Delta Airlines*, 2004 WL 524686, *8 n.9 (N.D. Ill. Mar. 17, 2004).

When considering a motion to dismiss on ATSA immunity grounds, courts accept as true "all well-pleaded allegations in the complaint," including allegations of the defendant's bad faith. *Id.* at *2. Granting ATSA immunity at the pleading stage is disfavored because the immunity's exception depends on whether the defendant's statement was "materially false," meaning the statement "would have a different effect on the mind of the reader or listener from that which the truth would have produced." *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 250 (2014) (cleaned up). Whether a statement is materially false is a "'mixed question of law and fact'" involving "delicate assessments of the inferences a 'reasonable decisionmaker' would draw from a given set of facts and the significance of those inferences to him." *United States v. Gaudin*, 515 U.S. 506, 512 (1995); *see also Hoeper*, 571 U.S. at 258 (Scalia, J., concurring in relevant part). Thus, while few reported cases discuss ATSA immunity, "virtually all courts have resolved the issue on summary judgment." *Columbare v. Sw. Airlines, Co.*, 2023 WL 406439, *3 (N.D. Tex. Jan. 10, 2023).

Defendants are not entitled to ATSA immunity. Banish lied to investigators with specific intent to defame Dunn and advance his wrongful prosecution. ATSA immunity does not apply to Miller, Cink, and Delta for several reasons, including because their liability does not arise from voluntary statements made to covered officials about a suspicious transaction.

### A. Banish Is Not Entitled To ATSA Immunity.

ATSA does not protect defendants, like Banish, who give knowingly false statements that investigators would consider important when determining their response. *Hoeper*, 571 U.S. at 252. As explained above, Banish knew his statements in and after the December 2022 interview were false. Compl. ¶¶141, 143. Those statements were clearly material. Any "reasonable" prosecutor would "consider it important" whether Dunn was joking and whether he interfered with Banish's duties, as both claims bear directly on the offense Dunn was later charged with. *Hoeper*, 571 U.S. at 252. Banish's false statements had a direct "effect … on [the government's] behavior," *id.*, because Dunn was indicted after Banish changed his story from the initial FBI call and from the December 2022 interview to falsely state that Dunn threatened Banish and interfered with his duties, Compl. ¶90; *see also supra* 4 n.3. When Dunn's attorney urged prosecutors to drop the charges for lack of evidence, the government proceeded to trial only after Banish gave more false statements in a follow-up interview. Compl. ¶101. Banish's false statements were material because they drove Dunn's prosecution. *Hoeper*, 571 U.S. at 252.

Defendants' plea for immunity ignores ATSA's text and precedent. They argue that because even a "bare reference" to shooting an airline captain would cause a reasonable official to investigate, "Banish's reports to law enforcement were materially true, and therefore subject to ATSA immunity." MTD 20-21. Relatedly, they argue that once Banish made his initial report to the FBI, his later statements are "all immunized acts by law enforcement flowing from" that report. MTD 22. Both arguments fail.

ATSA's text does not support Defendants' narrow focus on Banish's FBI report to the exclusion of his other statements. The immunity applies on a per-disclosure basis. *See* 49 U.S.C. §44941(a) (granting immunity "for such disclosure"). The exception for knowing or reckless false statements likewise covers "any disclosure." *Id.* §44941(b). Neither provision supports Defendants' view that Banish's initial report to a first-line responder is the only disclosure that matters.

Defendants also ignore *Hoeper*'s materiality standard, which asks only whether the government would consider the statement "important in determining a response to the supposed threat." 571 U.S. at 252. Prosecutors clearly considered Banish's post-FBI statements important when deciding how to proceed. *Supra* 7-8. Those statements were material and thus bear on whether ATSA's immunity exception applies. *Hoeper*, 571 U.S. at 252.[7]

### B. Miller, Cink, And Delta Are Not Entitled To ATSA Immunity.

Miller, Cink, and Delta are not entitled to ATSA immunity for several reasons. For starters, Defendants make no specific argument why ATSA immunity covers them, instead relying entirely on an unstated theory of vicarious immunity based on Banish's disclosures. *See* MTD 21-23. Nothing in ATSA's text supports such a theory, and Defendants make no effort to demonstrate otherwise. ATSA immunity is an affirmative defense, and Defendants failed to carry their burden to show it applies. *See Abdallah v. Am. Airlines Grp., Inc.*, 2021 WL 12280867, *4-5 (N.D. Tex. Dec. 6, 2021).

Nor is there a viable argument that Miller, Cink, and Delta are immune. Miller's only statements to investigators were apparently in response to a subpoena. *See* MTD 22.[8] Those statements

---

[7] Defendants' theory of ATSA immunity also would lead to absurd results. In *Baez v. JetBlue Airways Corp.*, for example, the gate agent who reported a traveler's sarcastic comment about a bomb would be immune if the agent later falsely testified that she saw a fuse hanging from the traveler's luggage. 793 F.3d 269 (2nd Cir. 2015).

[8] Miller's statements to Delta's counsel or Cink cannot be the basis for ATSA immunity. "The only possible category [those airline employees] could fall within is 'airline security officer,'" but that term "implies an individual specifically tasked with administering security for an airline." *Bandary v. Delta Air Lines, Inc.*, 2024 WL 5339296, *2 (C.D. Cal. June 10, 2024). It "does not include other employees who may need to respond to security issues if they arise in their normal duties." *Id.*

appear nowhere in Dunn's complaint or Defendants' exhibits, and Miller's liability for malicious prosecution does not turn on them. *See* Compl. ¶¶126-131. Moreover, Miller's and Cink's subpoenaed statements to prosecutors cannot receive ATSA immunity because they were not "voluntary." 49 U.S.C. §44941(a). Cink's statements to prosecutors as an expert witness, while voluntary, were about flight procedure, not about a "suspicious transaction relevant to a possible violation of law," *id.* §44941(a), and he made those statements knowing they were false or with reckless disregard of their falsity, *id.* §49941(b); *see* Compl. ¶¶103-105. ATSA immunity does not apply in these circumstances. *Id.* §44941(b).[9]

### III.  UTAH'S PUBLIC EXPRESSION PROTECTION ACT DOES NOT APPLY.

Utah's Uniform Public Expression Protection Act affords a defendant expedited consideration of a motion to dismiss, attorney's fees for a successful motion, and an interlocutory appeal for an adverse ruling, if the plaintiff's claims arise from certain exercises of the defendant's protected expression. Utah Code Ann. §78B-25-101, *et seq.* To receive these procedural benefits, the defendant must show that UPEPA applies to the cause of action and that the plaintiff failed to state a claim. §78B-25-107(1). Defendants' UPEPA motion fails for several reasons.

#### A.  UPEPA Does Not Apply In Federal Court.

Under Tenth Circuit precedent, UPEPA is a procedural law that does not apply in federal court. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996); *see Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

---

[9] Defendants briefly argue they are immune under the U.S. Constitution's Petition Clause. MTD 23 n.7. The Tenth Circuit has not recognized Petition Clause immunity in this context. *See CSMN Investments, LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1283 (10th Cir. 2020). And for good reason. If Petition Clause immunity covered false statements to investigators, the federal statute criminalizing such statements would be unconstitutional. *See* 18 U.S.C. §1001. Even if the Petition Clause did apply, however, it would not immunize Defendants because they acted with "malice." *McDonald v. Smith*, 472 U.S. 479, 482-85 (1985); *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1082 (10th Cir. 2011).

"State laws that solely address procedure and do not 'function as part of the State's definition of substantive rights and remedies' are inapplicable in federal diversity actions." *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018). A state rule is considered procedural if the "outcome [of the suit] would be substantially the same" under the federal rules "as it would be if tried in state court." *Id.* (cleaned up).

In *Los Lobos*, the Tenth Circuit held New Mexico's anti-SLAPP law does not apply in federal court because its provisions are "purely procedural." 885 F.3d at 670 (cleaned up). New Mexico's anti-SLAPP law affords a defendant: (1) expedited consideration of a defendant's motion to dismiss; (2) attorney's fees for a successful motion; (3) and an interlocutory appeal of an adverse decision. *Id.* at 663 (citing N.M. Stat. Ann. §38-2-9.1). Those provisions are procedural, and thus do not apply in federal court, because they do not "alter the rules of decision by which a court will adjudicate the merits of the complaint" nor "exempt[] or shield[] the defendant from liability." *Id.* at 670.

*Los Lobos* left open the question whether anti-SLAPP laws that "shift substantive burdens of proof or alter substantive standards, or both" apply in federal diversity cases. *Id.* Other circuits recognize those provisions as having "both substantive and procedural aspects," making the *Erie* analysis "difficult." *Compare Godin v. Schencks*, 629 F.3d 79, 89, 91 (1st Cir. 2010) (applying anti-SLAPP pleading standards and burden-shifting in federal court) *with Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1335-36 (D.C. Cir. 2015) (not applying them). For anti-SLAPP laws like New Mexico's, however, the "*Erie* analysis … is hardly a 'challenging endeavor'" because "the line between procedural and substantive is clear." *Los Lobos*, 885 F.3d at 668, 673. New Mexico's anti-SLAPP law contains no "rule of substantive law" and thus does not apply in federal court. *Id.* at 670.

*Los Lobos* compels the conclusion that UPEPA does not apply in federal court. UPEPA is indistinguishable from New Mexico's anti-SLAPP law, as both laws give defendants the same procedural rights and no substantive rights. *See* Utah Code Ann. §78B-25-105, -108 (expedited consideration), -109 (interlocutory appeal), -110 (fees). UPEPA does not "exempt[] from liability under any circumstance one who has violated the law while petitioning a governmental body." *Los Lobos*, 885 F.3d at 672. And UPEPA does not "alter substantive standards" or "shift substantive burdens of proof." *Id.* at 670; *see* §78B-25-107 (parallelling Federal Rule 12(b)(6)'s standard of review). Like New Mexico's analogous anti-SLAPP law, UPEPA is "purely procedural" and does not apply in federal court. *Los Lobos*, 885 F.3d at 670.

Defendants do not mention *Los Lobos*. They instead cite an out-of-state district court case applying the "heightened pleading standards" of Kansas's anti-SLAPP law. *See Caranchini v. Peck*, 355 F.Supp.3d 1052, 1060 (D. Kan. 2018) (distinguishing *Los Lobos*). UPEPA, however, does not impose a heightened pleading standard. It contains the same features *Los Lobos* held are "purely procedural." 885 F.3d at 670. Under *Los Lobos*'s clear reasoning, UPEPA does not apply. *Id.*

Defendants also cite this Court's preliminary-injunction decision in *UHS of Provo Canyon, Inc., v. Bliss*, which rejected a UPEPA motion on the merits. 2024 WL 4279243, *16 (D. Utah Sept. 24, 2024). *Bliss* did not cite *Los Lobos*, nor did it consider the procedure-substance distinction for state rules in diversity cases. *See id.* at *4. The Court's decision to deny the UPEPA motion on other grounds did not decide the *Erie* question. Even if it did, *Los Lobos*—not *Bliss*—would control the Court's decision here. *Cincinnati Ins. Co. v. AMSCO Windows*, 921 F.Supp.2d 1226, 1252 (D. Utah 2013) ("'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case'").

**B. Defendants' UPEPA Motion Fails On The Merits.**

Defendants' UPEPA motion also fails on the merits. As explained above, Dunn states claims for malicious prosecution and defamation. UPEPA thus does not entitle Defendants to attorney's fees or an interlocutory appeal of this Court's decision. *See* Utah Code Ann. §78B-25-107(1)(c).

## <u>CONCLUSION</u>

The Court should deny Defendants' motion to dismiss.

Dated: May 12, 2025

Respectfully submitted,

_/s/ Tyler Green_____
Tyler Green (Utah Bar No. 10660)
Patrick Strawbridge*
Matt Pociask*
Consovoy McCarthy PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com
matt@consovoymccarthy.com
patrick@consovoymccarthy.com

*admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this document through the Court's CM/ECF system on May 12, 2025, which will automatically serve counsel for all parties.

/s/ Tyler Green
Tyler Green