Rick Thaler (7002)
David B. Dibble (10222)
Katherine E. Priest (14758)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: rthaler@rqn.com
     ddibble@rqn.com
     kpriest@rqn.com

*Attorneys for Defendants Delta Air Lines, Inc., Robert Banish,*
*Kevin Miller, and Brian Cink*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JONATHAN DUNN,<br><br>        Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC., ROBERT BANISH, KEVIN MILLER, and BRIAN CINK,<br><br>        Defendants. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND UTAH'S UNIFORM PUBLIC EXPRESSION PROTECTION ACT**<br><br>Case No.: 2:24-cv-00967-HCN<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Dustin B. Pead |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Utah Code Section 78B-25-103, Defendants Delta Air Lines, Inc. ("Delta"), Robert Banish ("Captain Banish"), Kevin Miller ("Miller"), and Brian Cink ("Cink") (collectively the "Delta Defendants"), by and through undersigned counsel of record, submit this reply memorandum in support of their Motion to Dismiss (Dkt. 19).

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 6

I.    UTAH'S UNIFORM PUBLIC EXPRESSION PROTECTION ACT APPLIES IN FEDERAL COURT AND BARS EACH OF DUNN'S CLAIMS.................................. 6

    A.    UPEPA Provides Substantive Rights to the Delta Defendants and thus Applies in Federal Court. ...................................................................... 6

    B.    Dunn's Claims are Subject to UPEPA and Each Fails as a Matter of Law. ........... 8

II.    DUNN FAILS TO STATE ANY CLAIM AGAINST THE DELTA DEFENDANTS UPON WHICH RELIEF MAY BE GRANTED .................................... 9

    A.    ATSA Immunity Bars All of Dunn's Claims Against the Delta Defendants. ...................................................................................... 9

        i.    Captain Banish is Entitled to ATSA Immunity. ....................................... 12

        ii.    Captains Miller and Cink are Entitled to ATSA Immunity. ...................... 14

    B.    Petition Clause Immunity Also Bars Dunn's Claims. .......................................... 16

    C.    Dunn Does Not State an Actionable Claim for Defamation................................. 17

        i.    Captain Banish's Statements are Privileged and Were Made in Good Faith. ........................................................................................... 19

        ii.    Captain Banish's Alleged Statements Cannot Sustain a Defamatory Interpretation and are Inactionable Opinion. ............................................. 22

    D.    Dunn Fails to State a Claim for Malicious Prosecution........................................ 27

        i.    The Delta Defendants Did Not Initiate or Continue Criminal Proceedings Against an "Innocent Plaintiff." ........................................... 28

        ii.    The Delta Defendants Had Probable Cause to Report Dunn's Possible Crime. ...................................................................................... 29

        iii.    The Delta Defendants Reported Dunn's Possible Crime in the Interests of Justice. ................................................................................ 30

        iv.    The Criminal Proceedings Did Not Terminate in Dunn's Favor. ............... 30

CONCLUSION................................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

*Air Wisc. Airlines v. Hoeper*, 571 U.S. 237 (2014) ................................................. 9, 11, 12, 13, 14

*Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950 (Utah Ct. App. 1989) .................................. 28, 30

*Atwood v. Dotdash Meredith Inc.*, No. 1:24-cv-00046-TC-DAO,
2025 WL 815118 (D. Utah Mar. 13, 2025) .......................................................... 2, 29

*Baez v. JetBlue Airways Corp.*, 793 F.3d 269 (2d Cir. 2015) ...................................... 9, 11, 12, 13

*Bandary v. Delta Air Lines, Inc.*, No. 2:17-CV-1065-DSF,
2019 WL 9244788 (C.D. Cal. Oct. 11, 2019) ................................................... 10, 11, 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 21

*Bramhall v. Cyprus Credit Union*, No. 2:29-cv-00477-RJS-DAO,
2021 WL 5180945 (D. Utah Jan. 25, 2021) ...................................................... 19, 21

*Caranchini v. Peck*, 355 F. Supp. 3d 1052 (D. Kan. 2018) ........................................... 7, 8

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1992) ..................................... 24

*Coleman v. Grand*, 523 F. Supp. 3d 244 (E.D.N.Y. 2021) ........................................... 26

*Cox v. Hatch*, 761 P.3d P.2d 556 (Utah 1988) ...................................................... 19

*CSMN Investments, LLC v. Cordillera Metro. District*, 956 F.3d 1276 (10th Cir. 2020) ...... 16, 17

*Davidson v. Baird*, 2019 UT App 8, 438 P.3d 928 ................................................... 24

*Gilbert v. Ince*, 1999 UT 65, 981 P.2d 841 ......................................................... 28

*Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) ..................................................... 8

*Gray v. St. Martin's Press, Inc.*, 221 F.3d 243 ..................................................... 26, 27

*Hardman v. Roosevelt City*, No. 2:18-cv-00785-DBP, 2019 WL 2578586
(D. Utah Jun. 24, 2019) ............................................................................. 9

*Hodges v. Gilson Prod. Co.*, 811 P.2d 151 (Utah 1991) .............................................. 29

*Holmes v. Crown Asset Mgmt., LLC*, No. 2:19-CV-00758,
2021 WL 3473050 (D. Utah Aug. 6, 2021) ......................................................... 17

*Hook v. Regents of Univ. of California*, No. CIV. 05-356 JH/WPL,
2007 WL 9705919 (D.N.M. Mar. 29, 2007)............................................................ 23

*Int'l Ass'n of United Mine Workers Union v. United Mine Workers of Am.*,
No. 2:04CV00901, 2006 WL 1183245 (D. Utah May 1, 2006) ............................... 20

*Jacob v. Bezzant*, 2009 UT 37, 212 P.3d 535 (citation omitted) ........................... 22, 24

*Keisel v. Westbrook*, 2023 UT App 163, 542 P.3d 536 ............................................. 24

*Los Lobos Renewable Power, LLC v. Americulture, Inc.* 885 F.3d 659 (10th Cir. 2018)............. 7

*McDonald v. Smith*, 472 U.S. 479 (1985)................................................................... 16

*Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1052
(D. Kan. 2018) .......................................................................................................... 7

*Nastase v. Guido*, No. 254245, 2005 WL 1279985 (Ct. App. Mich. May 31, 2005)................... 27

*Neff v. Neff*, 2011 UT 6, 247 P.3d 380................................................................. 27, 30, 31

*Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) ............... 6

*Peterson v. Adams*, No. 216CV00775RJSPMW, 2018 WL 4627089
(D. Utah Sept. 7, 2018) ......................................................................................... 28

*Peterson v. XPO Logistics, Inc.*, 812 F. App'x 754 (10th Cir. 2020)......................... 19

*Potter v. Utah Driv-Ur-Self System, Inc.*, 355 P.2d 714 (Utah 1960) ........................ 29

*Project Veritas v. Leland Stanford Junior Univ.*, No. C21-1326 TSZ,
2022 WL 1555047 (W.D. Wash. May 17, 2022) ..................................................... 6

*Puttuck v. Gendron*, 2008 UT App 362 ..................................................................... 31

*Rain Focus Inc. v. Cvent Inc.*, 2023 UT App 32, 528 P.3d 1221 ............................... 20

*Sandmann v. New York Times Co.*, 617 F. Supp. 3d 683 (E.D. Ken. 2022)............... 26

*Turner v. Wells*, 879 F.3d 1254 (2018)...................................................................... 26

*UHS of Provo Canyon, Inc. v. Bliss*, No. 2:24-cv-163-DAK-CMR,
2024 WL 4279243 (D. Utah Sept. 24, 2024)...................................................... 8, 9

*United States v. Cothran*, 286 F.3d 173 (3d Cir. 2002) ............................................ 13

*United States v. Lynch*, 881 F.3d 812 (10th Cir. 2018) ............................................ 26

*West v. Thomson Newspapers*, 872 P.2d 999 (Utah 1994) ......................................... 13, 24, 25, 26

*XPO Logistics, Inc. v. Peterson*, No. 2:15-cv-703-CW, 2025 WL 1114392
(D. Utah Apr. 15, 2025) ............................................................................................... 20

**Statutes**

18 U.S.C. § 3500 ................................................................................................................ 17

49 U.S.C. § 44905 ................................................................................................................ 3

49 U.S.C. § 44941 ........................................................................................................... 9, 10

49 U.S.C. § 46504 .............................................................................................................. 26

49 U.S.C. § 46507 .............................................................................................................. 13

Utah Code 78B-25-101 ....................................................................................................... 4

Utah Code 78B-25-103 ........................................................................................................ i

Utah Code 78B-25-107(1) ............................................................................................... 7, 8

Utah Code 78B-25-111 ....................................................................................................... 7

**Rules**

Fed R. Civ. P. 12(b)(6) ......................................................................................... i, 2, 6, 9, 31

**Treatises**

Restatement (Second) of Torts, § 653 (1977) .................................................................... 28

**INTRODUCTION**

Dunn's opposition brief demonstrates that there is no dispute about his egregious conduct while piloting a Delta flight. And based on the allegations in the Complaint and the documents incorporated therein, none of the Delta Defendants can be liable for their reasonable responses to his threatening behavior. Dunn does not object to, or otherwise dispute, the factual content of any document attached to the Delta Defendants' Motion to Dismiss ("Motion"), each of which is referred to and incorporated in his Complaint. Those documents establish the following:

- When discussing a potential diversion during for a medical emergency during a flight in August 2022, Dunn said that Captain Banish's 51 votes would be trumped by his "46," a reference to the fact Dunn was carrying a loaded 9mm Glock with 46 rounds of ammunition. He told Captain Banish that he "would just have to shoot [him]." (Ex. A. at 1157-1168.) He would "keep shooting [Captain Banish]," and when "they would listen to the CVR and they would wonder why I shot so many times and why I reloaded two times" he would say "the first shot was a kill shot, but I still shot you because you kept twitching." (*Id*. at 1203-1221.)[1]

- Captain Banish, who was alone on the flight deck with Dunn, was fully aware that Dunn was carrying a loaded firearm: Dunn told Captain Banish and others that he was an FFDO, and Captain Banish had seen Dunn taking his "gun off and on." (Ex. A. at 1238-39, 1364-1384.)

- Shortly after reporting Dunn's outrageous statements to Delta, Captain Banish also recounted Dunn's comments to the FBI and explained that he did not "know if [Dunn] was joking or serious." (*See generally* Ex. B.)[2]

- In December 2022, Captain Banish met with federal agents and prosecutors and reiterated that he did not know, and was in no position to know, whether Dunn was being serious or not. (Ex. A at 918-920, 1774-1789, 1815-1839.)

---

[1] Tellingly, nowhere in Dunn's Complaint or his briefing does he ever quote what he actually said on that flight.

[2] Captain Banish told law enforcement that neither Captain Miller nor Captain Cink encouraged him to report the incident to the FBI. (Ex. D at 2.)

- On October 18, 2023, Dunn was indicted by a federal grand jury in this district.[3] (Compl. at ¶ 91.)

- On January 29, 2024, Captain Banish again met with federal prosecutors and law enforcement officers (the first time since Dunn was indicted). Law enforcement summarized this meeting and expressly disclaimed that the summary was a verbatim account of the conversation. (Ex. D.) In any event, the government evidently understood that Captain Banish "felt" Dunn might be serious and that Captain Banish "did not know what Dunn would do" had the decision been made to divert the flight to Grand Junction. (Ex. D.)

Faced with the apparent insufficiency of the allegations in his Complaint, Dunn now cites to alleged statements that were out of context, never pled, and misquoted. Dunn, for example, suggests that Captain Banish acted in bad faith by allegedly telling law enforcement on January 29, 2024, "Dunn's comments affected his decision making because he feared he would have to decide between diverting or getting shot." (Opp. at 5; Compl. at ¶ 101.) In fact, however, law enforcement reports Captain Banish as saying that his "decision making was affected because *he was not sure* if he would have to decide between diverting or getting shot." (Ex. D to Motion at 3 (emphasis added).) Dunn also ignores that the foregoing statement, and others upon which he relies, are taken from a meeting summary prepared by government agents.

---

[3] Dunn's stated theory is that prosecutors chose not to prosecute Dunn based on Captain Banish's interview statements on December 15, 2022, and that Captain Banish must have changed his story and given another statement to federal prosecutors between December 22 and Dunn's indictment in October 2023. Dunn alleges no facts to support this baseless and conclusory allegation. (Opp. at 4; Compl. at ¶ 90 ("On information and belief, at some point between December 15, 2022 and December 29, 2023, Banish changed his story and falsely told the government he did not think Dunn was joking."); *Id.* n. 3 ("Based on the timing of Dunn's indictment, however, Banish *likely* made this statement again sometime before October 18, 2023." (emphasis added)).) "[F]acts alleged 'upon information and belief' may meet Rule 12(b)(6)'s plausibility standard *so long as they are not merely conclusory.*" *Atwood v. Dotdash Meredith Inc.*, No. 1:24-cv-00046-TC-DAO, 2025 WL 815118, at *9 (D. Utah Mar. 13, 2025) (emphasis added).

To resolve this matter, the Delta Defendants simply ask the Court to closely review the entirety of the transcripts and interview summaries relied upon by Dunn. In doing so, the Court will find that neither Captain Banish nor Delta defamed Dunn. Nor could any of the Delta Defendants be liable for malicious prosecution.

Captain Banish was clear that he was not sure what to do when faced with Dunn's threatening statements, but he believed that law enforcement should be informed so that they could take whatever action *they* deemed necessary. That is precisely what airline employees are required to do to maintain aviation safety and security. *See* 49 U.S.C. § 44905. And to ensure the free flow of such information, state and federal law protect such reports from retaliatory lawsuits like Dunn's.

Captain Banish reported the facts as he knew them, and he was candid that he did not know (and could not know) Dunn's intent. Captain Banish described that he was "in a situation where if nothing were to happen with this guy, I wouldn't be surprised, but if there were a serious incident, I would also not be surprised." (Ex. B at 5:23-6:1.) Captain Banish was concerned about doing the right thing and did not want to sit on something that could be an issue. As he described it, if Dunn "does something crazy," he could "at least say [he] reported this to the appropriate authorities." (Ex. A to Motion at 2240-2244.)

The non-conclusory facts underlying Dunn's claims are not in dispute. And as set forth above, correctly recount an unimaginable breakdown of flight deck discipline created by Dunn's conduct. But the applicable law presents an even greater hurdle for Dunn.

Dunn's claims must be dismissed with prejudice as they are based wholly on communications made by Captain Banish (and the Delta Defendants) that are protected by Utah's anti-SLAPP act – the Uniform Public Expression Act ("UPEPA"). Utah Code Ann.

§ 78B-25-101, *et. seq*. Dunn's retaliatory Complaint amounts to a "strategic lawsuit against public participation." Dunn relies on an inapposite Tenth Circuit case analyzing a different New Mexico statute to argue that UPEPA is a purely procedural law that does not apply in federal court. But he ignores the key distinctions in UPEPA that make it a substantive law – one recently applied to defamation claims in this Court.

Moreover, Dunn's claims are also wholly barred by the Aviation and Transportation Security Act ("ATSA"). Dunn contends that ATSA does not apply because the Delta Defendants made knowingly false and material statements to law enforcement. There is no factual basis, however, for asserting that their statements to law enforcement were false. Indeed, none of the Delta Defendants knew, or could know, whether Dunn intended to shoot Captain Banish. Furthermore, it would be immaterial to a reasonable security officer receiving a report of Dunn's threats whether Dunn possibly may have been joking. Once Captain Banish made his report to law enforcement, the Delta Defendants are immune from the prosecutorial activity that followed.

Likewise, Dunn's claims are also barred by Petition Clause Immunity. Dunn does not dispute that the Tenth Circuit has specifically recognized the constitutional protection afforded by the Petition Clause. Instead, he simply argues that it has not been recognized *in this context*. Dunn, however, ignores that the Petition Clause was intended to protect reports, like the Delta Defendants', to law enforcement, as courts have recognized.

Even if Dunn could defeat those immunities, he still fails to state substantively valid claims for defamation. He contends that Captain Banish defamed him directly, and by implication, by accusing him of a crime. Captain Banish, however, simply reported what Dunn told him, and he explicitly deferred to law enforcement to decide whether Dunn's conduct was

criminal. Any alleged damage to Dunn's reputation was the result of his own admitted threats, which any reasonable person would conclude were outrageous for a pilot on an aircraft, even if made as a joke. Furthermore, Captain Banish's reports to law enforcement were inactionable matters of opinion, incapable of objective verification. Regardless, Dunn's defamation claims are barred by the judicial proceedings privilege, and Dunn's unsupported allegation of bad faith is insufficient to overcome that privilege.

Dunn's claim for malicious prosecution fails as a matter of law. Dunn's claim is based on the faulty premise that the Delta Defendants initiated and continued his criminal proceedings by giving knowingly false statements to the government. Those allegations lack any factual support. The Complaint (and incorporated documents) demonstrate that federal prosecutors acted within their own discretion when filing charges and continuing their prosecution against Dunn.

In sum, Dunn's Complaint fails on its face. That is why Dunn's Opposition relies mostly on creative splicing to contort the reality of the actual statements—all of which remain undisputed and raise very serious questions about Dunn's behavior that day. But even if the Court were to peel back the allegations and review the underlying statements in context, all of which come from documents incorporated in Dunn's Complaint and attached to the Delta Defendants' Motion, each statement confirms without question that they do not support Dunn's allegations. And, since those documents are the only facts corroborating Dunn's allegations, they show that the case must be dismissed. Dunn continues to avoid taking any responsibility for *his own* outrageous statements and instead blames *everyone else* for the natural consequences of his own conduct. Dunn's misguided claims, however, are meritless and should be dismissed as a matter of law.

## ARGUMENT

**I.** **UTAH'S UNIFORM PUBLIC EXPRESSION PROTECTION ACT APPLIES IN FEDERAL COURT AND BARS EACH OF DUNN'S CLAIMS.**

**A.** **UPEPA Provides Substantive Rights to the Delta Defendants and thus Applies in Federal Court.**

While it is true that courts view some anti-SLAPP statutes as "procedural mechanisms" that do not apply in federal court, such is not the case here. Utah recently adopted the Uniform Public Expression Protection Act ("UPEPA"), which is specifically formulated "to prevent substantive consequences: the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit." Uniform Law Commission, Uniform Law and Commentary, § 2 cmt. 2. As such, Utah UPEPA joins the class of anti-SLAPP statutes that *do* apply in federal court. *See id*. (citing *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) (applying California's anti-SLAPP law in federal court); *see also Project Veritas v. Leland Stanford Junior Univ.*, No. C21-1326 TSZ, 2022 WL 1555047, at *4 (W.D. Wash. May 17, 2022) ("The Court concludes that UPEPA applies in federal court and will analyze Stanford's UPEPA motion, and the motion to dismiss filed by UW, under the standards of Rule 12(b)(6).").[4]

---

[4] Courts recognize that declining to apply state anti-SLAPP laws in federal court creates undesirable results:

> If this Court declined to apply the Act, it would encourage forum shopping and would result in inequitable application of the law, the two goals of the Erie doctrine. A plaintiff could, and would, choose to file her defamation suit in federal court— so long as diversity exists—in order to avoid the heightened standards set forth by the Act in state court. Defendants would then only have the traditional means provided by the Federal Rules of Civil Procedure to dismiss the case—even if it was truly an infringement on First Amendment rights. The court would be applying Kansas defamation laws without the additional protections the Kansas legislature chose to enact.

Dunn erroneously argues that the Tenth Circuit ruling in *Los Lobos* is controlling in this case. (Opp. at 22, Dkt. 35.) *Los Lobos*, however, is inapposite because the New Mexico anti-SLAPP law considered in that case is different from UPEPA – the court observed that it was "unlike many other states' anti-SLAPP statutes" and is "entirely procedural." *Caranchini*, 355 F. Supp. 3d at 1057 (citing *Los Lobos Renewable Power, LLC v. Americulture, Inc.* 885 F.3d 659, 670-73 (10th Cir. 2018).) Indeed, the *Los Lobos* Court recognized that the New Mexico anti-SLAPP statute "did not set forth any substantive rules." *Id.* at 1060.

Thus, contrary to Dunn's argument, UPEPA is not "indistinguishable" from New Mexico's anti-SLAPP law. Rather, UPEPA is more akin to the anti-SLAPP statutes in Kansas and Colorado, which federal courts have followed. *See e.g.*, *Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1052, 1057-61 (D. Kan. 2018) (distinguishing *Los Lobos* and applying Colorado's anti-SLAPP statute in federal court); *Caranchini*, 355 F. Supp. 3d at 1057-61 (distinguishing *Los Lobos* and applying Kansas's anti-SLAPP statute in federal court). As one example of the distinction, like the Colorado and Kansas anti-SLAPP laws (and unlike New Mexico's), UPEPA specifically contains a burden-of-proof shifting requirement and instructions that it "shall be broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the United States Constitution or the Utah Constitution." *See id.*; *see also* Utah Code Ann. §§ 78B-25-107(1), 78B-25-111. Ultimately, UPEPA is not intended as a substitute to the Federal Rules, but rather "create[s] a supplemental and substantive rule to provide added protections to defendants who are named as parties because of constitutional

---

*Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1060 (D. Kan. 2018).

petitioning activity." *Caranchini*, 355 F. Supp. 3d at 1059 (citing *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010)).

Furthermore, Judge Kimball applied UPEPA to a case pending in this court. *See UHS of Provo Canyon, Inc. v. Bliss*, No. 2:24-cv-163-DAK-CMR, 2024 WL 4279243, *3-4 (D. Utah Sept. 24, 2024). While Dunn notes that the court in *Bliss* did not specifically engage in an *Erie* analysis, he ignores that the court specifically considered the purpose and directives of UPEPA and applied UPEPA to the claims in that case. *Id*. at *3 (discussing that Utah adopted UPEPA "to further protect a person's free speech rights" and in that spirit courts are directed to "broadly construe UPEPA"). Ultimately, *Bliss* is instructive to this Court, as it properly considers UPEPA's application in federal court, consistent with other states in the Tenth Circuit that have similar anti-SLAPP statutes. UPEPA is properly applied in this matter and acts as a total bar to Dunn's claims.

### B. Dunn's Claims are Subject to UPEPA and Each Fails as a Matter of Law.

As noted in *Bliss*, UPEPA requires a two-part analysis in federal court. The Court must determine: (1) whether UPEPA applies to this action; and (2) whether Dunn has a legally viable cause of action. *Bliss*, 2024 WL 4279243 at *4; *see also* Utah Code § 78B-25-107(1)(a)-(c). Dunn does not dispute (in fact he does not even address) that his claims are based entirely on speech protected by UPEPA. (*See generally* Opp. at 20-23.) As such, the first prong of the UPEPA analysis is satisfied. And as set forth in the Motion and below, the second prong is satisfied because Dunn has failed to state a cause of action against the Delta Defendants upon which relief can be granted. Consequently, "the court must dismiss the action and 'award court

costs, reasonable attorney fees, and reasonable litigation expenses related to this motion'" to the

Delta Defendants. *Bliss*, 2024 WL 4279243 at *4.[5]

## II. DUNN FAILS TO STATE ANY CLAIM AGAINST THE DELTA DEFENDANTS UPON WHICH RELIEF MAY BE GRANTED

A careful review of each document referred to and incorporated in the Complaint

demonstrates that Dunn fails to state any legally viable claim. As such each claim should be

dismissed under Rule 12(b)6) of the Federal Rules of Civil Procedure.[6]

### A. <u>ATSA Immunity Bars All of Dunn's Claims Against the Delta Defendants</u>.

Immunity pursuant to the Aviation and Transportation Security Act ("ATSA") is

absolute, except in situations where disclosures were "made with actual knowledge that the

disclosure was false, inaccurate, or misleading" or otherwise made with "reckless disregard for

the truth or falsity of that disclosure." *Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir.

2015) (noting ATSA provides immunity from liability for reporting suspicious activity relating

to, among other things, a threat to aircraft or passenger safety, "unless the report was materially

false"); *Air Wisc. Airlines v. Hoeper*, 571 U.S. 237, 248-249 (2014) (holding that "ATSA

immunity may not be denied under § 44941(b) to materially true statements"); *see also* 49 U.S.C.

§ 44941(a). Key to ATSA is that "immunity for making reports to law enforcement is immunity

---

[5] Even in the unlikely event the Court determines that UPEPA does not apply and declines to grant the Delta Defendants their costs and attorneys' fees, the entire case must still be dismissed with prejudice since all the claims fail as a matter of law for numerous reasons.

[6] Dunn does not dispute that the Court may properly consider the documents attached to the Motion, which are referred to and incorporated into Dunn's Complaint. *See, e.g., Hardman v. Roosevelt City*, No. 2:18-cv-00785-DBP, 2019 WL 2578586, at *3 (D. Utah Jun. 24, 2019) ("In evaluating a motion to dismiss, the Court is entitled to consider the recording, since the interrogation is referenced in Mr. Hardman's proposed amended complaint and is central to his claims.")

from liability *for whatever law enforcement might do with those reports.*" *Bandary v. Delta Air Lines, Inc.*, No. 2:17-CV-1065-DSF, 2019 WL 9244788, * 3 (C.D. Cal. Oct. 11, 2019) (emphasis added); *see also Ilczyszyn v. Southwest Airlines Co.*, 80 Cal.App.5th 577, 601 (Cal. Ct. App. 2022) (holding that ATSA immunity "may be extended to the conduct that arises from security threat disclosures" because limiting the immunity to reports of suspicious activity only would turn "TSA's 'when in doubt, report' policy on its head"). "Otherwise, immunity would be largely meaningless." *Bandary*, 2019 WL 9244788 at *3. As such, each Delta Defendant is entitled to ATSA immunity for Captain Banish's reports to law enforcement and the subsequent actions law enforcement took in response, including eliciting the participation of Captains Cink and Miller in the criminal proceeding against Dunn. *See id.*

Dunn's opposition raises two principal arguments in response. Neither with merit.

First, Dunn argues in a footnote that ATSA immunity cannot possibly extend to all future law enforcement actions following a credible report as that would lead to absurd results if the reporter later changes his or her story and falsifies additional facts. (Opp. at 19.) Setting Dunn's inapposite hypothetical scenario aside, Dunn's policy preferences have no bearing on the breadth of the statutory text contained in ATSA. 49 U.S.C. § 44941(a) (airline employees who make a "voluntary disclosure of any suspicious transaction . . . shall not be civilly liable to any person *under any law* . . . for such disclosure"). Construing the breadth of the statute, the *Bandary* court held that if the initial report does not contain materially false information, an air carrier and its employees are immune for the consequences that follow from a law enforcement investigation. 2019 WL 9244788 at *3. In any event, Dunn's conjured "absurd result" raises the prospect of absurd results in the other direction where an airline employee makes a substantially true report

to authorities, but then due to fading memories, certain details change, and then that opens up the airline employee and their employer for potential liability to a jaded criminal defendant. Those are precisely the sorts of policy demarcations best left for Congress. *Cf. Air Wisconsin*, 571 U.S. at 248-49 ("Congress wanted to ensure that air carriers and their employees would not hesitate to provide the TSA with the information it needed. This is the purpose of the immunity provision, evident both from its context and from the title of the statutory section that contained it: 'encouraging airline employees to report suspicious activities.' It would defeat this purpose to deny immunity for substantially true reports, on the theory that the person making the report had not yet gathered enough information to be certain of its truth.").

Second, Dunn argues that ATSA cannot apply at the pleading stage. (Opp. at 17.) But in this case, there is no dispute as to the statements at issue and the written record that underlies Dunn's claims. Thus, "[r]esolution of the immunity issue" at this stage is consistent with the "admonition to resolve immunity questions at the earliest possible point in the litigation." *Baez*, 793 F.4d at 274-75 (cleaned up) (affirming ruling on ATSA immunity because "the facts and law will reasonably support only one conclusion on which reasonable persons could not differ."); *see also Bandary*, 2019 WL 9244788 at *3 (recognizing that the facts show that the defendant had an objectively reasonable belief that the plaintiff engaged in criminal conduct). Dunn does not dispute that he told Captain Banish that he would shoot him 46 times until he stopped twitching. Nor does he object to the documents referred to and incorporated in the Complaint, which demonstrate that all the statements that serve as the basis for Dunn's claims were materially truthful reports to law enforcement about Dunn's misconduct. As such, resolution of ATSA immunity at this stage is appropriate. *See id*.

Dunn's opposition as to the individual defendants is equally without merit.

    i.    <u>Captain Banish is Entitled to ATSA Immunity</u>.

For a party to defeat ATSA immunity, they must show that the disclosure or report was "materially false," which is a two-part analysis. First, the plaintiff must establish "falsity," which is analyzed using the same standard in defamation cases as set forth in *New York Times Co. v. Sullivan*. *Hoeper*. 571 U.S. at 247. Second, the false statement must be "material," meaning that it is "one that would have a different effect on the mind of . . . a reasonable security officer." *Baez*, 793 F.3d at 274. The inquiry is *not* "the actual significance of [a] fact to a particular security official" (or the "government" generally or the "prosecutor" in Dunn's criminal case specifically), but rather it is an "objective [inquiry], involving the hypothetical significance of an omitted or misrepresented fact to a reasonable security official." *Id*. at 252 (citation omitted) (cleaned up). Thus, Dunn repeatedly misapplies the standard for ATSA immunity when he argues that Captain Banish's allegedly false statements were material because they "had a direct effect on the government's behavior." (Opp. at 18 (cleaned up).)

As an initial matter, Captain Banish's reports to law enforcement were truthful. Captain Banish truthfully reported that Dunn said he would shoot him 46 times, or until he stopped twitching (Dunn does not dispute saying that). (*See generally* Opp.) Captain Banish also truthfully explained that he "was not sure" if Dunn was joking, "did not consider" Dunn's comments to be a joke, or otherwise "did not think" Dunn was joking. (Compl. ¶ 141; *see also* Exs. A, C, and D to Motion.) But neither Dunn's intent nor the accuracy of Captain Banish's belief about Dunn's intent when he made his threatening statements are *capable* of being

objectively verified.[7] *See West v. Thomson Newspapers*, 872 P.2d 999, 1019 (Utah 1994). Thus,

they *cannot be* false, ATSA immunity applies, and that is the end of the ATSA immunity

analysis. *Hoeper*, 571 U.S. at 247.

Even assuming *arguendo* that Captain Banish's statements about Dunn's intent could be

objectively verified and were false (which is not the case), such statements would not be

*materially* false. Indeed, a *reasonable security officer* receiving a report from a Captain of a

commercial airliner full of passengers that the First Officer stated he would use his service

weapon to repeatedly shoot the Captain, would investigate the report and take action, regardless

of the Captain's speculation as to the intent of the offender.[8] *See e.g.*, *Baez*, 793 F.3d at 274-76

(applying ATSA immunity even where the "reporting" employee did not actually think the

passenger posed a serious threat to the airline, and finding that such immunity applies "even if

the passenger's precise words are misrepresented"). The policy reasons for such broad immunity

---

[7] Dunn argues that the fact that Captain Banish "did not preserve the cockpit voice recorder" is evidence that Captain Banish did not consider Dunn's threat to be serious. (*See* Opp. at 2, 14.) This is a red herring that was litigated in the underlying criminal case, and the Court need not wade into in this matter. Nevertheless, Dunn's assertion is frivolous, particularly coming from a former commercial pilot. The Cockpit Voice Recorder (CVR), which continually records on a loop while an aircraft is operating, is only saved or "pulled" in the rarest of circumstances involving an NTSB reportable accident or incident. "Pulling" the CVR requires that an aircraft be taken out of service until the CVR is replaced/repaired, likely affecting hundreds if not thousands of downstream passengers. In other words, the CVR is not CCTV footage or some routine recording device available for evidentiary preservation on any occasion. In any event, the CVR from this incident captured exactly what Dunn already admitted and Captain Banish already reported, which is that Dunn told Captain Banish he would shoot him no less than 46 times, or until Captain Banish stopped twitching, to avoid a possible emergency diversion.

[8] This is particularly true where either scenario (whether Dunn was serious or joking that he would shoot Captain Banish) constitutes a crime. Indeed "a bad joke" on an aircraft may properly be the subject of criminal action. *Baez*, 793 F.3d 269; *see also United States v. Cothran*, 286 F.3d 173 (3d Cir. 2002) (citing to 49 U.S.C. § 46507) Thus, even if the statement Dunn admits making was in fact a "joke" – as Dunn argues – this is an admission that he committed a federal crime.

are clear: security officers cannot be bound by the subjective speculation of intent by the reporting employee, and the reporting employee cannot be fearful that their subjective assessment of the bad-actor's intent is wrong and will subject them to liability. Otherwise, the entire statute is undermined, and "chills" and discourages the very reporting that it was enacted (post 9/11) to specifically encourage. *See id*.

Dunn claims that Captain Banish is not entitled to ATSA immunity because he made a false report to law enforcement when he reported that he was not sure if Dunn was joking when he stated he would shoot Captain Banish. That is nonsensical. Captain Banish, upon being told that he would be shot to avoid a possible emergency diversion, did what he is required to do. He truthfully told law enforcement what Dunn said and truthfully reported that he did not know what Dunn's intent was in making those statements. Accordingly, Captain Banish is entitled to complete ATSA immunity, requiring all of Dunn's claims to be dismissed.

ii.   Captains Miller and Cink are Entitled to ATSA Immunity.

Dunn is suing Captains Miller and Cink for malicious prosecution. He alleges that they "helped initiate and continue proceedings against Dunn," elicited "incriminating statements from Dunn" in a routine employment interview investigating his conduct, and "on information and belief" encouraged Captain Banish to report Dunn's conduct.[9] (Compl. at ¶ 126.) Dunn also

---

[9] The allegation that Captain Miller and/or Captain Cink encouraged Captain Banish to call the FBI is directly contrary to the Dec. 15 Transcript and January 29 Summary, referred to and incorporated into the Complaint, and attached as Exhibits A and D to the Motion, wherein Captain Banish stated that a personal friend, whose brother works at the FAA, encouraged him to call the FBI. (Ex. A at 161-167.) In any event, even if the allegation in Paragraph 126 were true, such "encouragement" would be entitled to ATSA immunity as it would contradict all logical reasoning, and the stated purpose for ATSA immunity, if one could be liable for encouraging another person to report a threat to the government. *Hoeper*, 571 U.S. at 248.

alleges that Captain Cink "assisted the government's prosecution as both a fact and expert witness." (Compl. at ¶ 126.)

All the foregoing alleged conduct flowed from Captain Banish's report to law enforcement. First, Captains Miller and Cink were required to conduct an interview with Dunn prior to Delta proceeding with termination of his employment, and Dunn does not make any challenge to the reasons for his interview and disciplinary proceedings. (*See generally* Compl.) The reason that this employment interview was provided to the government in Dunn's criminal case is because the government subpoenaed Delta for those records in February 2023, months after his interview. Likewise, Captain Cink's potential participation as a witness was in response to a trial subpoena issued by the government for him individually and as the person most knowledgeable about Delta's policies and piloting practices relating to Crew Resource Management.[10] Tellingly, Dunn does not allege anything malicious about complying with a valid government subpoena. Nor does he allege any falsity or impropriety in any statement voluntarily originating from Captains Miller or Cink to the government. Put simply, Dunn names Captains Miller and Cink in this suit because he does not like that they held him accountable for his words. But he cannot allege any false statements by Captains Miller and Cink that would vitiate broad ATSA immunity.

---

[10] Dunn alleges that "Cink was prepared to serve as both an expert and fact witness for the government" and allegedly falsely "testify that a decision to divert the flight to Grand Junction under the circumstances would have been rational and consistent with Delta policy." (Compl. at ¶¶ 103, 126(g).) The fact is, Grand Junction was an entirely suitable alternative for Captain Banish to plan for had the circumstances escalated to the point where an emergency diversion was required. (Ex. A at 1118-1140, 1667-1674.)

In short, the allegedly unlawful conduct alleged by Dunn against Captains Miller and Cink was a **direct** result of what "law enforcement [decided] do with [Captain Banish's] reports." *Bandary*, 2019 WL 9244788 at *3. As such, Captains Miller and Cink[11] are entitled to ATSA immunity. *See id*.

   B.     <u>Petition Clause Immunity Also Bars Dunn's Claims.</u>

Dunn argues that Petition Clause immunity does not apply in this case, and he cites *CSMN Investments, LLC v. Cordillera Metro. District*, 956 F.3d 1276, 1283 (10th Cir. 2020), for the proposition that the Tenth Circuit has not recognized Petition Clause immunity "in this context." (Opp. at 20, fn. 9.) But the court in *CSMN Investments* recognized that "[t]he right to petition extends to all departments of the Government[, and] [t]he right of access to the courts is . . . but one aspect of the right to petition." *Id.* (alterations in original). Furthermore, as cited by Dunn, the Supreme Court recognized application of Petition Clause immunity to claims for defamation. *See generally McDonald v. Smith*, 472 U.S. 479 (1985). And various federal courts have applied Petition Clause immunity to claims for defamation and malicious prosecution, as explained in the Delta Defendants' Motion.

As a non sequitur, Dunn asserts that if Petition Clause immunity covered false statements to investigators, federal law criminalizing such statements would be unconstitutional. There is no doubt that certain false statements to law enforcement may not be protected. Indeed, as this Court recognized, the Petition Clause "immunizes litigants from liability for their petitioning

---

[11] Delta is also entitled to ATSA immunity as Dunn's express theory of liability for both claims asserted against Delta is vicarious liability. (Compl. at ¶ 132 ("Delta [is] vicariously liable for their employees' malicious prosecution"); ¶ 145 ("Delta is vicariously liable for [Captain] Banish's defamation").) Because Captains Banish, Miller, and Cink are entitled to ATSA immunity, so is Delta.

activities, unless the petitioning is a sham." *Holmes v. Crown Asset Mgmt., LLC*, No. 2:19-CV-00758, 2021 WL 3473050, at *2 (D. Utah Aug. 6, 2021) (quotations and citation omitted). To determine whether a petition is a sham, the Tenth Circuit "provides a two-step approach: (1) is the petitioning objectively reasonable? (2) and only if it is not, what is the subjective intent behind the petitioning?" *Id.*; *see also CSMN Invs. LLC*, 956 F.3d at 1286 (noting that the interests warranting immunity "still exist when petitioning may have been brought with improper motives, provided it was commenced with an objectively reasonable basis"). As the Delta Defendants have explained in detail, Captain Banish had an objectively reasonable basis for reporting Dunn's comments to law enforcement, and such reports are Constitutionally immune.

## C. <u>Dunn Does Not State an Actionable Claim for Defamation</u>.

In his Complaint, Dunn pleads three alleged statements that serve as the basis of his defamation claim: (1) on December 15, 2022, Captain Banish "told investigators . . . that 'he was not sure' whether Dunn was joking"; (2) sometime between December 15, 2022 and December 29, 2023, Captain Banish told prosecutors that he "did not consider [Dunn's comments] a joke";[12] and (3) on January 29, 2024, Captain Banish told prosecutors that he "did not think" Dunn was joking and that Dunn's comments had interfered with Captain Banish's decision making. (Compl. at ¶ 141(a).)

---

[12] Dunn does not specifically allege that Captain Banish made this statement. Rather, Dunn implies that Captain Banish must have made such a statement because the United States made such a representation in a court filing on December 29, 2023. (Compl. at ¶ 141(a).) But the lack of any direct attribution to Captain Banish is fatal and implausible where, as here, Dunn has received and liberally relied upon all of Captain Banish's statements in the government's possession. *See* 18 U.S.C. § 3500.

Pivoting from his original allegations, Dunn now cites to the following alleged statements, which are not pleaded in his Complaint: (1) Captain Banish stated "that Dunn's comments intimidated him;" (2) Captain Banish "falsely stated that he 'believed Dunn was attempting to take over the cockpit using his firearm;'" and (3) "Dunn's comments affected his decision making because he feared he would have to decide between diverting or getting shot." (Opp. at 11.)

Importantly, Dunn puts quotes around statements that are not quotes from Captain Banish but are instead law enforcement's own *summary* of interviews with Captain Banish (rather than transcripts containing actual quotes from him). (*See*, *e.g.*, Ex. D to Motion.) Dunn then uses his false and selective misquoting of the January 29 Summary to invite the false conclusion that Captain Banish had definitively concluded that Dunn was serious, when in fact he did not know whether Dunn was joking. (*Compare* Opp. at 11 "[Captain] Banish falsely stated . . . he feared he would have to decide between diverting or getting shot" *with* Ex. D at 3 "[Captain Banish's] decision making was affected because *he was not sure* if he would have to decide between diverting and getting shot." (emphasis added).)

Dunn wrongfully argues that the Delta Defendants do not dispute that (1) Captain Banish published all of the statements alleged in the Complaint; (2) Captain Banish acted with the requisite degree of fault; and (3) Dunn was injured by Captain Banish's statements. (Opp. at 11.) Dunn also argues that the Delta Defendants do not assert that Captain Banish's statements were true. (*Id*. at 11.) As clearly articulated in the Motion and herein, each of these points is demonstrably false. In fact, (1) the Delta Defendants highlight that Dunn relies on law enforcement summaries of Captain Banish's statements, and not Captain Banish's actual

statements, i.e., Captain Banish did not publish the alleged statements; (2) Captain Banish did not act in bad faith when he truthfully told law enforcement he did not know if Dunn was joking; (3) Dunn alone caused any injury he alleges he suffered as a result of his ridiculous threats; and (4) Captain Banish's subjective impression about Dunn's subjective intent in making the threat are both incapable of objective verification as either true or false.

In any event, none of Dunn's allegations (as stated in the Complaint or otherwise in the Opposition) can serve as the basis for Captain Banish's or Delta's liability for defamation. Those statements are privileged, they cannot sustain defamatory meaning, and they are otherwise protected opinion. As such Dunn fails to state a viable claim for defamation and the same must be dismissed. *Cox v. Hatch*, 761 P.3d P.2d 556, 561 (Utah 1988) (affirming dismissal for failure to state a claim).

     i.     <u>Captain Banish's Statements are Privileged and Were Made in Good Faith</u>.

Under Utah law, "false and defamatory statements are not actionable if they are protected by a legal privilege, including the judicial-proceeding privilege." *Bramhall v. Cyprus Credit Union*, No. 2:29-cv-00477-RJS-DAO, 2021 WL 5180945, *7 (D. Utah Jan. 25, 2021) (quotations and citation omitted). While Utah has recognized a "bad faith" exception to the judicial proceedings privilege for attorneys, it has not recognized any such exception for parties/litigants. In the absence of any such ruling, the Tenth Circuit assumed that the Utah Supreme Court would also extend that "bad faith" exception to parties. *See Peterson v. XPO Logistics, Inc.*, 812 F. App'x 754, 758 (10th Cir. 2020). But the Tenth Circuit guessed wrong. While not binding, the Utah Court of Appeals recognized only a limited exception to absolute immunity after the Tenth Circuit ruling in *Peterson* – the only exception is for excessive

publication; there is not any bad-faith exception for parties/litigants. *See e.g., Rain Focus Inc. v. Cvent Inc.*, 2023 UT App 32, ¶¶ 14-15, 528 P.3d 1221; *Lavender v. FCOI Preserve, LLC*, 2025 UT App 47, ¶¶ 85. Here the individual defendants are even farther afield than litigants as each one was a victim or witness in the underlying criminal case, not a party.

But even if the "bad faith" exception to the privilege applied, Dunn cannot show that Captain Banish acted in bad faith, particularly considering the documents incorporated in the Complaint, which demonstrate the context of his statements to law enforcement. On remand from the Tenth Circuit, the *XPO Logistics* court noted that the Tenth Circuit did not provide any guidance as to what would constitute "bad faith" to overcome the judicial proceedings privilege for litigants. *XPO Logistics, Inc. v. Peterson*, No. 2:15-cv-703-CW, 2025 WL 1114392, *15-16 (D. Utah Apr. 15, 2025). Ultimately, the court suggests that the proper standard for "bad faith" is to show "actual malice," which requires Dunn to show that the Captain Banish "had actual knowledge the statements were false or actually entertained serious doubts as to whether the statements were true" and *not* "whether a reasonable person would have known that the statements were false or entertained serious doubts about their truth." *Id*. at *16; *see also id*. at *16, n.96.

Dunn's Complaint, including all incorporated documents thereto, do not show actual malice. *Int'l Ass'n of United Mine Workers Union v. United Mine Workers of Am.*, No. 2:04CV00901, 2006 WL 1183245, at *34 (D. Utah May 1, 2006) (granting motion to dismiss where plaintiffs failed to "plead facts from which a reasonable person could infer malice"). Indeed, Captain Banish went out of his way to expressly decline characterizing Dunn's threat as "criminal." Instead, he specifically deferred to the federal prosecutors' judgment on the matter.

(Ex. A to Motion at 129-143, 2214-2222; Ex. B at 5:17-6:1.) Captain Banish declined to speculate about Dunn's intent and was candid and consistent about his inability to enter Dunn's mind to ascertain what he intended. (Ex. A at 918-920, 1774-1789, 1815-1839; Ex. D at 2-3.) This does not evidence "bad faith" or actual malice.

Dunn points to texts between Captain Banish and others *after* Dunn was indicted as supposed evidence of bad faith. Those texts, however, which discuss attending Dunn's criminal proceedings, shed no light on Captain Banish's intent at the time he reported Dunn's conduct to law enforcement, much less evidence of any bad faith. (Opp. at 16.) Indeed, such texts are entirely consistent with Captain Banish's stated intention of reporting Dunn's conduct to law enforcement, which was for the sole purpose of public safety. As it turns out, people do not appreciate being threatened with graphic murder while piloting a commercial airliner and being responsible for the health and safety of 200 passengers, and all while in the midst of a very emotional passenger medical emergency (a mid-flight miscarriage). It stands to reason that someone experiencing this may reasonably look forward to a just remedy, and when Dunn was arraigned on federal charges they may be a bit indelicate in communications with others impacted by Dunn's egregious actions. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007) (inference of conspiracy impermissible where factual allegations are equally consistent with lawful acts).

Because Captain Banish's statements were made in good faith during the course of a judicial proceeding, they are all privileged. *Bramhall*, 2021 WL 5180945 at *8 (holding that witness statements made in the course of a criminal investigation and prosecution fall within the

scope of the judicial proceedings privilege under Utah law). Consequently, Dunn's defamation claim fails as a matter of law and should be dismissed.

        ii.        <u>Captain Banish's Alleged Statements Cannot Sustain a Defamatory Interpretation and are Inactionable Opinion</u>.

When determining whether a statement is capable of sustaining a defamatory interpretation, a court does NOT accept "as true all material allegations contained in the complaint and all reasonable inferences drawn therefrom." *Jacob v. Bezzant*, 2009 UT 37, ¶ 18, 212 P.3d 535 (citation omitted). Rather, "the reviewing court must look to the context of the allegedly defamatory statement and then, in a non-deferential manner, reach an independent conclusion about the statement's susceptibility to a defamatory interpretation*." Id.* "Whether a statement is susceptible to a defamatory interpretation is a question of law." *Id*. Accordingly, the Court should not "indulge [Dunn] by interpreting inferences that may be reasonably drawn from the statements in favor of a defamatory meaning." *Id*.

Dunn argues that Captain Banish's statements are susceptible to a defamatory interpretation because they, either directly or indirectly by implication, accused Dunn of a crime. (Opp. at 12.) Dunn argues that Captain Banish's alleged statement (not pled in the Complaint and taken from the January 29 Summary) that "he believed Dunn was attempting to take over the cockpit using his firearm" expressly "accused Dunn of a felony" and constitutes defamation per se. (Opp. at 13.) Dunn also argues that Captain Banish indirectly, by implication, accused Dunn of a crime by stating that he "was not sure" or "did not consider" and "did not think" Dunn was joking. (*Id*. at 12-13.) Once again, Dunn makes arguments with no factual support and which are directly contradicted by the documents themselves.

As an initial matter, Captain Banish neither explicitly nor implicitly accused Dunn of a crime. In fact, Captain Banish expressly did the opposite: when federal prosecutors asked Captain Banish about potential criminal charges for Dunn, he said "[t]o be honest, that – that's just your department. I'm just a guy telling you what happened." (Ex. A. at 129-146.) Captain Banish later reiterated this point and said "I'm trying to answer the questions . . . just factually . . . [and] not trying to insert emotion . . . or speculation into . . .anything." (*Id*. at 2200-2214.) Captain Banish repeatedly stated that *he did not know* Dunn's true intentions or if Dunn would have followed through with his threat. (Exs. A, B, C, and D.) Captain Banish himself made the point that Dunn seems to miss or ignore – he is not in Dunn's head and thus it is not even possible for him to know if Dunn was joking or not. (Ex. A at 910-931.) Further highlighting this point, this would not even be allowed at trial as it clearly is objectionable since it calls for speculation and lacks any foundation on how Captain Banish could possibly know what Dunn was thinking. *See, e.g., Hook v. Regents of Univ. of California*, No. CIV. 05-356 JH/WPL, 2007 WL 9705919, *5 (D.N.M. Mar. 29, 2007) (noting that speculative testimony about the thoughts and motives of others is inadmissible testimony); Fed. R. Evid. 602 ("A witness may testify to a matter only if. . . the witness has personal knowledge of the matter."). Furthermore, because they did not end up having to divert to Grand Junction, Captain Banish could not know whether Dunn was joking, as the condition precedent under which Dunn said he would shoot Captain Banish never occurred. (Ex. A at 1764-1799.)

When taken as a whole, a reasonable person could not read Captain Banish's statements to explicitly or implicitly accuse Dunn of any crime. Captain Banish's statements about Dunn's possible intent and his feelings in response to Dunn's statements, are incapable of sustaining a

defamatory meaning and are inactionable as a matter of law. *Jacob*, 2009 UT 37 at ¶ 18; *West*,

872 P.2d at 1008-09.[13]

Furthermore, none of the alleged statements supporting Dunn's claim for defamation are

capable of objective verification. In other words, they are inactionable opinion. *Davidson v.*

*Baird*, 2019 UT App 8, ¶¶ 31, 438 P.3d 928 (citing *West*, 872 P.2d at 1015). Dunn argues that

Captain Banish's "claimed lack of knowledge" and the alleged implication that Dunn committed

a crime, is capable of being proven true or false. (Opp. at 14-15.) Not so.

Defamation by implication is the most disfavored version of this disfavored tort. *See*, *e.g.*,

*Chapin v. Knight-Ridder*, *Inc*., 993 F.2d 1087, 1092-93 (4th Cir. 1992) ("[B]ecause the

constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an

especially rigorous showing where the expressed facts are literally true."). In a "defamation-by-

implication" claim, "it is the implication arising from the allegedly defamatory statement and the

context in which it was made, not the statement itself, that provides for the basis of the suit."

*Keisel v. Westbrook*, 2023 UT App 163, ¶ 43, 542 P.3d 536 (citing *West*, 872 P.2d at 1011.) The

"objectively verifiable element" in a defamation-by-implication claim breaks down into two

---

[13] It is important to note that any damage to Dunn's reputation was caused by his own statements. Captain Banish cannot be liable for restating them to law enforcement. Again, Dunn does not dispute he told Captain Banish that he would *shoot him 46 times, or until he stopped twitching*. (*See generally* Opp and Ex. A.) Dunn's own statement, by itself, "tends to injure [Dunn's] reputation" in the eyes of a reasonable person. *West*, 872 P.2d at 1008. And particularly in this context, a "just kidding" from Dunn, makes no difference to a reasonable person passing judgment on Dunn's character (particularly a potential passenger on an airplane). And any reasonable person would rightfully question the judgment and character of any person, and most certainly a heavily armed commercial pilot/federal officer, for "joking" in such a manner. It is even more despicable that when Captain Banish simply reported Dunn's own words, Dunn sought to silence, intimidate, and retaliate against his victim. In short, any damage to Dunn's reputation was caused by his own admitted statements.

questions: "First could a reasonable fact finder conclude the underlying statement conveys the allegedly defamatory implication? Second, if so, is that implication sufficiently factual to be susceptible of being proven true or false?" *Id*. Dunn, therefore, must show that the "implication itself is sufficiently factual to be . . . capable of being objectively verified as true or false." *West*, 872 P.2d at 1018-19.

Captain Banish's statements did not convey the implication Dunn alleges, i.e., that Captain Banish accused Dunn of committing a crime. As discussed previously, Captain Banish explicitly stated to federal prosecutors that he was *not* in a position to judge whether Dunn's threat amounted to a federal crime. (Ex. A to Motion at 129-143 ("To be honest, that's – that's just your . . . department. I'm just . . . a guy telling you what happened"), 2214-2222.) And when Captain Banish says "I don't know" in response to a pointed question whether he thought Dunn was joking, there is no reasonable implication one way or another.

At most, the so-called implication of Captain Banish's statements is that Dunn was not joking when he stated he would shoot Captain Banish 46 times. But whether Dunn was joking is incapable of being objectively verified. *West*, 872 P.2d at 1019 ("[A]sking a fact finder to determine the subjective intent behind West's alleged change of position will inevitably produce a verdict based on speculation.").

Dunn's argument in this regard relies on false assumptions and legal gymnastics. Dunn argues that because federal prosecutors would have had to prove that Dunn interfered with the crew on the flight to convict him in his criminal case, Dunn's intent is objectively verifiable. (Opp. at 14.) But establishing whether Dunn actually interfered with the flight crew is a distinct issue from Dunn's intent. In fact, the criminal charge Dunn faced, Interference with a Flight

Crew, requires no specific intent, undermining Dunn's entire argument. *See* 49 USC § 46504; *see also United States v. Lynch*, 881 F.3d 812, 815-17 (10th Cir. 2018) (defining Interference with a Flight Crew as a general intent crime, meaning prosecutors must only prove he intended to make the statement, not that defendant specifically intended to interfere or assault or intimidate). Thus, while prosecutors may have proven that Dunn intended to make the statement or even that he actually interfered with the flight, that would not somehow magically convert Captain Banish's uncertainty about Dunn's intent to shoot him into an "objectively verifiable" fact as required by law.[14] *West*, 872 P.2d at 1019; *see also Sandmann v. New York Times Co.*, 617 F. Supp. 3d 683, 692 (E.D. Ken. 2022) ("It has long been established that someone's state of mind is not capable of being proven true or false."); *Coleman v. Grand*, 523 F. Supp. 3d 244, 262 (E.D.N.Y. 2021) (holding that alleged defamatory statements regarding the party's intent are "inherently subjective evaluations of intent and state of mind, which are matters not readily verifiable and intrinsically unsuitable as a foundation for defamation."); *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 ("If it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of

---

[14] In an attempt to distinguish *Turner v. Wells*, 879 F.3d 1254 (2018), Dunn mischaracterizes the court's holding. In *Turner*, an investigator concluded that the subject's conduct, which the subject characterized as a joke, was "homophobic taunting." The subject asserted that the investigator's conclusion was defamatory. Dunn erroneously asserts that the court was evaluating the investigator's "choice of label" and that Banish's choice of label for Dunn's conduct is not at issue in this case – Dunn contends that the issue is the implication that Dunn threatened him with a deadly weapon. (Opp. at 15.) In fact, however, the court in *Turner* did not talk about any "choice of label"; it ruled that the investigator's "*subjective assessment* of [the subject's] conduct is not readily capable of being true or false." *Id.* 1264. That is exactly what is at issue here – whether Captain Banish's subjective assessment of Dunn's actual intent to shoot him is capable of being true of false. It is not. It is "an opinion not actionable in a defamation suit." *Id.*

objectively verifiable facts, the statement is not actionable" (citation omitted).)[15] And Captain

Banish's statements describing his personal emotions that he "felt" intimidated or threatened are

similarly not capable of objective verification. *See, e.g.*, *Nastase v. Guido*, No. 254245, 2005 WL

1279985, * 3 (Ct. App. Mich. May 31, 2005) (holding that any statement regarding the

defendant's "sense" that he was threatened by the plaintiff "cannot amount to defamation" as

they cannot be objectively verifiable as false.").[16]

Thus, on this additional basis, Dunn's defamation claim must be dismissed as a matter of

law.

### D. Dunn Fails to State a Claim for Malicious Prosecution.

Dunn does not sufficiently plead the elements of malicious prosecution in light of the

documents incorporated in the Complaint. *Neff v. Neff*, 2011 UT 6, 247 P.3d 380.

---

[15] Dunn cites *Gray* for the proposition that a "person's knowledge base and emotional state are 'objective facts' capable of being proven true or false." (Opp. at 15.) *Gray* says no such thing. In fact, Gray holds that multiple statements, such as "Gray completely faked his closeness with a number of senior administration officials," a company "ultimately failed because it offered very little real substance," and an implication that "Gray may have acted on this request [to spy]" were inactionable opinions or otherwise incapable of defamatory meaning. 221 F.3d at 249-250. With that, Dunn has no legal support for his conclusion that a "person's emotional state" or "knowledge base" are objective facts. *Id.*; *see also* Opp. at 15.

[16] To illustrate his claim of defamation by implication, Dunn argues that if there were only two possible suspects of a crime, one suspect claiming not to know about the crime implicitly accuses the other of it. So Captain Banish's statement that he did not know whether Dunn was joking about shooting Captain Banish necessarily implied that Dunn intended to shoot him (or at least threaten him). This example serves only to highlight a fundamental problem with Dunn's defamation claim. Using Dunn's example, it is objectively verifiable whether one of two suspects actually robbed a bank. Here, however, whether Dunn would have actually shot Captain Banish is not capable of objective verification because they never diverted to Grand Junction, which was the premise of Dunn's threat.

i.        The Delta Defendants Did Not Initiate or Continue Criminal Proceedings Against an "Innocent Plaintiff."

Dunn's entire theory of malicious prosecution rests on his false assertion that Captain Banish knowingly gave false statements to law enforcement, making "any true exercise of the prosecutor's discretion . . . impossible." (Opp. at 8.) Dunn's theory fails as a matter of law as Captain Banish consistently stated to law enforcement that he was not sure whether Dunn was joking when he threatened to shoot Captain Banish (which, again, is not disputed by Dunn), and Captain Banish explicitly told prosecutors that he intended only to provide the facts as he experienced them. (Ex. A at 129-146.) He expressly declined to give his opinion as to the appropriate charges (if any) that should be brought against Dunn. (Ex. A at 2157-2222.) In short, Captain Banish did not inhibit the federal prosecutors from exercising their own independent discretion when they indicted Dunn. Restatement (Second) of Torts, § 653 (1977); *cf Peterson v. Adams*, No. 216CV00775RJSPMW, 2018 WL 4627089, at *13 (D. Utah Sept. 7, 2018).

Because Captain Banish's call to the FBI (and his subsequent statements) were appropriate and lawful, and because the prosecutor exercised independent discretion in securing an indictment against Dunn, any participation by Captains Miller and Cink in Dunn's prosecution is inactionable. *See e.g.*, *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 959 (Utah Ct. App. 1989); *Gilbert v. Ince*, 1999 UT 65, ¶ 18, 981 P.2d 841 (explaining that "malicious prosecution applies to the circumstance when a person with improper motive falsely accuses another individual of a crime"). As such, none of the Delta Defendants initiated or continued criminal proceedings against an "innocent plaintiff."

ii.     <u>The Delta Defendants Had Probable Cause to Report Dunn's Possible Crime</u>.

For the purposes of malicious prosecution, a person can rely on the advice of the prosecuting attorney in determining whether probable cause exists. *See*, *e.g.*, *Hodges v. Gilson Prod. Co.*, 811 P.2d 151, 159-60 (Utah 1991); *Potter v. Utah Driv-Ur-Self System, Inc.*, 355 P.2d 714, 718 (Utah 1960) ("[I]f one could not sign such a complaint upon the advice of the prosecuting attorney and in reliance on the work of properly constituted officers in the performance of their duties, the result would be to greatly discourage cooperation in the filing of such complaints, thus impairing the process of justice.").

Captain Banish explicitly stated to law enforcement that he did not know whether Dunn was joking or if he committed an actionable crime based upon the facts provided. (Ex. A at 2200-2222.) The documents reflect Captain Banish acting in good faith and disclosing, in great detail, all facts related to Dunn's threats in his discussions with law enforcement and there is no evidence that would negate Captain Banish's good-faith reliance on the federal prosecutors, the Grand Jury, and this Court's assessment of probable cause in this matter. Further, there is no allegation that Captains Miller and Cink acted in any way inconsistent with Captain Banish and thus there is no basis to claim that Captains Miller and Cink (and thereby Delta) did not have probable cause. Specifically, Dunn, without a factual basis, alleges that Captains Miller and Cink knew that Captain Banish's accusations were false." (Opp. at 8-9.) Dunn alleges no facts that would allow anyone to make an inference that Captains Miller and Cink had any plausible reason to "know" that Captain Banish had allegedly falsely accused Dunn of wrongdoing, and thereby did not possess probable cause. *Atwood*, 2025 WL 815118, at *9. Essentially, Dunn improperly seeks to impute Captain Banish's so-called knowledge about Dunn's intent, and federal

prosecutors' theory of their criminal case, to Captains Miller and Cink to try to paint them as "bad actors." Captains Miller and Cink, like Captain Banish, do not (and could not) know Dunn's intent in making the threat to Captain Banish, and thus cannot be civilly prosecuted for the same.

iii.     The Delta Defendants Reported Dunn's Possible Crime in the Interests of Justice.

The "malice element means that Defendants initiated criminal proceedings for a 'primary purpose other than bringing an offender to justice.'" *Agler v. Scheidle*, No. 20060332-CA, 2006 WL 3647393, *1 (Utah Ct. App. 2006) (citing *Amica Mut. Ins. Co*., 768 P.2d at 959). As discussed previously, the evidence is clear that Captain Banish (and thus the remaining Delta Defendants) made reports in good faith. Dunn apparently abandons the theory that Captain Banish acted with malice towards Dunn for political reasons (and rightly so given that Captain Banish and Dunn are politically aligned), but now points to post-indictment communications between Captains Banish, Miller and Cink to evidence improper motive. Such allegations are not sufficient given that the conduct happened *after* Dunn was indicted (and is not inconsistent with good faith). Indeed, one can have the intent of bringing an offender to justice (like Captain Banish) and can also look forward to observing the criminal proceedings of the person who threatened to shoot him 46 times. In reporting Dunn, Captain Banish was clear that he simply wanted to do his civic duty by reporting Dunn's threat and did not have a stake in the outcome. (Ex. B to Motion at 5:17-6:1; Ex. A at 129-143, 2214-2222.)

iv.     The Criminal Proceedings Did Not Terminate in Dunn's Favor.

Criminal proceedings "have terminated in favor of the accused only when the final disposition of the criminal charges is such as to indicate the innocence of the accused." *Neff v.*

*Neff*, 2011 UT 6, ¶ 52, 247 P.3d 380. Ultimately, the Utah precedent on this particular element makes clear that termination of a proceeding in favor of the accused must reflect the **merits** of the underlying action in order for proceedings to be considered terminated in the accused's favor. *See, e.g.*, *Neff*, 2011 UT 6 at ¶ 52; *see also Puttuck v. Gendron*, 2008 UT App 362, ¶ 9.

Ultimately, there is no dispute that the dismissal of the charges against Dunn were without prejudice and did not tend to indicate Dunn's innocence. As such, Dunn cannot meet this element as a matter of law.

For these reasons, Dunn has not sufficiently alleged a claim for malicious prosecution against the Delta Defendants, and thus his claim should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, the Delta Defendants respectfully request that the Court dismiss Plaintiff's claims against them as they fail to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), and grant the Delta Defendants their costs and attorneys' fees incurred in defending this retaliatory lawsuit.

DATED this 16th day of June 2025.

RAY QUINNEY & NEBEKER P.C.

*/s/ David B. Dibble*
Rick Thaler
David B. Dibble
Katherine E. Priest

*Attorneys for Defendants Delta Air Lines, Inc.,*
*Robert Banish, Kevin Miller, and Brian Cink*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2025, I electronically filed the foregoing **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND UTAH'S UNIFORM PUBLIC EXPRESSION PROTECTION ACT** using the CM/ECF system of the District Court of the State of Utah which sent notification of such filing to:

> Tyler Green
> Matt Pociask
> Patrick Strawbridge
> **CONSOVOY MCCARTHY PLLC**
> tyler@consovoymccarthy.com
> matt@consovoymccarthy.com
> patrick@consovoymccarthy.com
>
> *Attorneys for Plaintiff*

/s/ Doris Van den Akker

1708960