Tyler Green, Utah Bar No. 10660
Patrick Strawbridge*
Matt Pociask*
Consovoy McCarthy, PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com
patrick@consovoymccarthy.com
matt@consovoymccarthy.com

*Attorneys for Plaintiff Jonathan Dunn*
*admitted pro hac vice*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH - CENTRAL DIVISION**

| | |
|---|---|
| JONATHAN DUNN,<br><br>                                    *Plaintiff,*<br><br>        v.<br><br>DELTA AIR LINES, INC.; ROBERT BAN-ISH; KEVIN MILLER; and BRIAN CINK,<br><br>                                    *Defendants.* | **PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION TO DISMISS**<br><br>Case No.  2:24-cv-967-HCN-DBP<br><br>Hon. Howard C. Nielson, Jr.<br>Hon. Dustin B. Pead |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................3

   I.     Defendants Accused Dunn of a Serious Felony in Bad Faith. .................................3

   II.    Defendants' Merits Arguments Fail. .......................................................................5

       A.   Dunn States Claims for Malicious Prosecution..................................................5

       B.   Dunn States Claims for Defamation...................................................................7

   III.   No Privilege or Immunity Shields Defendants from Liability. ...............................8

       A.   ATSA Immunity Does Not Cover Defendants' Bad-Faith Disclosures.......................8

       B.   The Judicial Proceedings Privilege Does Not Protect Bad Faith Conduct.................10

       C.   Petition Clause Immunity Does Not Apply....................................................10

   IV.   UPEPA Does Not Apply in Federal Court. ...........................................................13

CONCLUSION .....................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Abbas v. Foreign Policy Grp. LLC,*
    783 F.3d 1328 (D.C. Cir. 2015)...........................................................................14

*Air Wisconsin Airlines v. Hoeper,*
    571 U.S. 237, 252 (2014).....................................................................................9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................... 3, 4, 7

*Bandary v. Delta Airlines, Inc.,*
    2019 WL 9244788 (C.D. Cal. Oct. 11, 2019)......................................................9

*Barnett v. Hall, Estil, Hardwick, Gable, Golden & Nelson,*
    956 F.3d 1228 (10th Cir. 2020) ..........................................................................14

*Baum v. Gillman,*
    667 P.2d 41 (Utah 1983) ......................................................................................7

*BE & K Constr. Co. v. NLRB,*
    536 U.S. 516 (2002) .................................................................................... 11, 13

*Burlington N. R.R Co.. v. Woods,*
    480 U.S. 1 (1987)................................................................................................15

*Carbone v. Cable News Network, Inc.,*
    910 F.3d 1345 (11th Cir. 2018) ..........................................................................14

*CSMN Investments, LLC v. Cordillera Metro. Dist.,*
    956 F.3d 1276 (10th Cir. 2020) ............................................................. 11, 12, 13

*GoSecure Inc. v. Bhandari,*
    637 F.Supp.3d 368 (E.D. Va. 2022) ..................................................................11

*Gray v. St. Martin's Press, Inc.,*
    221 F.3d 243 (1st Cir. 2000) ................................................................................7

*Hanna v. Plumer,*
    380 U.S. 460 (1965) ...........................................................................................15

*Hansen v. Delta Airlines,*
    2004 WL 524686 (N.D. Ill. Mar. 17, 2004) ........................................................8

*Hodges v. Gibson Prods. Co.,*
    811 P.2d 151 (Utah 1991) ....................................................................................6

*Hogan v. Winder,*
    762 F.3d 1096 (10th Cir. 2014) ...........................................................................8

*In re Chanticleer Assocs.,*
    592 F.2d 70 (2nd Cir. 1979).................................................................................15

*Lavender v. FCOI Pres., LLC.,*
    2025 UT App. 47 ................................................................................................10

*Los Lobos Renewable Power, LLC v. Americulture, Inc.,*
    885 F.3d 659 (10th Cir. 2018) ............................................................ 13, 14

*McDonald v. Smith,*
    472 U.S. 479 (1985) ............................................................................ 12

*Metabolic Research, Inc. v. Ferrell,*
    693 F.3d 795 (9th Cir. 2012) .............................................................. 14

*Moss v. Parr Waddoups Brown Gee & Loveless,*
    285 P.3d 1157 (Utah 2012) ................................................................. 10

*Neff v. Neff,*
    247 P.3d 380 (Utah 2011) ................................................................... 6

*NRA v. Vullo,*
    602 U.S. 175 (2024) ............................................................................ 3

*Peterson v. XPO Logistics, Inc.,*
    812 F. App'x 754 (10th Cir. 2020) ..................................................... 10

*Pettit v. Maxwell,*
    509 S.W.3d 542 (Tex. Ct. App. 2016) ................................................ 6

*Pro. Real Est. Inv., Inc. v. Columbia Pictures Indus.,*
    508 U.S. 49 (1993) .............................................................................. 11

*Puttuck v. Gendron,*
    199 P.3d 971 (Utah Ct. App. 2008) .................................................... 6

*Racher v. Westlake Nursing Home Ltd. P'ship,*
    871 F.3d 1152 (10th Cir. 2017) .......................................................... 14

*Rain Focus Inc. v. Cvent Inc.,*
    528 P.3d 1221 (Utah Ct. App. 2023) .................................................. 10

*Reichert v. Draud,*
    511 F.Supp. 679 (E.D. Ky 1981) ....................................................... 12

*Saville v. Roberts,*
    1 Ld. Raymond, 374 (1678) ................................................................ 11

*Scott v. Hern,*
    216 F.3d 897 (10th Cir. 2000) ............................................................ 12

*Sexton v. Poulsen & Skousen P.C.,*
    372 F.Supp.3d 1307 (D. Utah 2019) .................................................. 13

*Shady Grove Orthopedic v. Allstate Ins.,*
    559 U.S. 393 (2010) ............................................................................ 15

*Smith v. Vicorp, Inc.,*
    107 F.3d 816 (10th Cir. 1997) ............................................................ 15

*Smith-Hunter v. Harvey,*
    734 N.E.2d 750 (N.Y. 2000) .............................................................. 6

*Thompson v. Clark,*
    596 U.S. 36 (2022) ....................................................................................... 11, 12

*UHS of Provo Canyon v. Bliss,*
    2024 WL 4279243 (D. Utah Sept. 24, 2024) ................................................. 14

*United States v. Dunn,*
    No. 2:23-cr-375-HCN-JCB-1 (D. Utah Feb. 9, 2024) ..................................... 5

*United States v. Hardman,*
    297 F.3d 1116 (10th Cir. 2002) .................................................................... 13

*United States v. Shamo,*
    36 F.4th 1067 (10th Cir. 2022) ..................................................................... 13

*Walter v. Jet Aviation Flight Servs.,*
    2017 WL 3237375 (S.D. Fla. July 31, 2017) ................................................... 8

*West v. Thomson Newspapers,*
    872 P.2d 999 (Utah 1994) ............................................................................... 7

*Woodmansie v. Logan,*
    2 N.J.L. 86 (1806) ....................................................................................... 12

**Statutes**

49 U.S.C. §44941 ................................................................................................. 8

**Other Authorities**

Francis Hilliard, *The Law of Torts or Private Wrongs* (3d ed. 1866) ..................... 11

Restatement (Second) of Torts ............................................................................... 6

Thomas M. Cooley, T*reatise on the Law of Torts or the Wrongs Which Arise Independent of Contract* (1880) 10

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 13

# INTRODUCTION

Banish and a clique of Delta pilots disliked Dunn, so they seized on Dunn's imprudent joke as an opportunity to put the screws to him. When the prosecutor first interviewed Banish about Dunn's remark, Banish played up the story. He pretended not to know whether Dunn was joking and said that Dunn intimidated him. That interview did not get the results Banish and the others wanted, so months later, Banish changed his story again and falsely told the prosecutor that Dunn interfered with his duties. To bolster that phony claim, Cink offered to give false expert testimony to plug the many holes in Banish's account—among them, that the crew, dispatch, and on-call physician already ruled out diverting to Grand Junction, and that Delta's flight procedures prohibited diverting in the circumstances without pre-clearance. Banish's and Cink's false statements, plus the misleading statement Miller elicited in Dunn's disciplinary hearing, caused the prosecutor to charge Dunn and convinced the government to proceed to trial. The charge was promptly dismissed after the FBI recording exposed Banish's lies. Dunn's detailed complaint supports these facts with specific allegations of who knew what and when, and who said what and when. Accepting those allegations as true, they plausibly state claims for malicious prosecution and defamation.

Defendants spend much of their reply asserting their own version of events. They say Banish's contradictory statements were all true or that his story to investigators never changed. Those factual claims are not just wrong, they are also premature. The case is before the Court on Dunn's legal theory. Defendants make no serious effort to show that Dunn's allegations are so conclusory or implausible that they fail to meet Rule 8's modest requirements. Defendants' fact disputes must wait for discovery.

Their legal challenges to Dunn's claims fail. Prosecutorial discretion does not defeat a malicious prosecution claim where, as here, the defendant supplies the prosecutor knowingly false information. Nor does favorable termination require that Dunn's charge was dismissed with prejudice. The Utah Supreme Court adopted the Second Restatement's approach to that element of the malicious

prosecution tort, and Dunn's proceedings terminated favorably under those rules. Other courts agree that dismissal with prejudice is not required, and Defendants don't cite any case reaching the opposite conclusion. As for Dunn's defamation claims, Defendants' legal arguments rest on the premise that Banish did not accuse Dunn of a crime, either implicitly or explicitly. But that premise is clearly false: Banish was the sole witness to Dunn's comments, and there would be no prosecution without his statements to investigators. It is more than merely plausible that in those statements Banish accused Dunn of a crime.

Defendants search in vain for privileges and immunities to avoid the consequences of their malicious and unlawful conduct. ATSA does not immunize materially false, inaccurate, and misleading statements, like Banish's false accusations against Dunn. It does not matter that Banish previously told a more truthful version of events to the FBI. ATSA's text—which Defendants don't meaningfully address—makes clear that the immunity applies on a per-disclosure basis. Utah's judicial proceedings privilege also does not cover knowingly false statements. Defendants' Petition Clause argument fails for several reasons. For one thing, the Fourth Amendment *forbids* malicious prosecution. It is illogical to argue, as Defendants do, that the First Amendment *protects* that same conduct. Even if Defendants' "objective reasonableness" test did apply in this context, they would flunk it because Dunn's prosecution was based entirely on knowingly false statements.

Defendants' arguments for why UPEPA applies in federal court also fail. They assert that UPEPA "contains" a burden shifting requirement, but they do not say where in UPEPA's text they find this requirement or explain how the burden shifting might work. Even if their unspecified burden shifting requirement did exist, Defendants fail to explain why the burden shifting is substantive under the *Erie* doctrine. Defendants' failure to adequately brief these arguments isn't from a lack of space. They just spent their pages disputing Dunn's well-pleaded facts.

The Court should deny Defendants' motion in its entirety.

<u>**ARGUMENT**</u>

**I.    Defendants Accused Dunn of a Serious Felony in Bad Faith.**

In their reply, Defendants repeatedly assert that Dunn's factual allegations are incorrect. But courts "assume the well-pleaded factual allegations in the complaint are true" when ruling on a Rule 12(b)(6) motion. *NRA v. Vullo*, 602 U.S. 175, 195 (2024). To succeed in challenging the factual sufficiency of Dunn's complaint, Defendants must show that Dunn's allegations, accepted as true, fail to make out a claim that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dunn's detailed complaint far surpasses the plausibility check.

The allegations supporting two facets of Dunn's complaint bear emphasis given Defendants' heavy focus on fact disputes: that Defendants knew Dunn did not genuinely threaten Banish or interfere with his duties, and that Defendants caused and continued Dunn's prosecution.

Dunn adequately pleads that Defendants knew Dunn did not make a genuine threat, interfere with Banish's duties, or attempt to take over the aircraft using his firearm. Dunn's complaint supports these conclusions with specific facts, including that:

- Banish, Dunn, Delta dispatch, and an on-call physician determined a diversion was not warranted, and they decided to land as scheduled in Salt Lake City. Compl. ¶29. The plane was already passing Grand Junction when Dunn made the comments, and they were less than 40 minutes from touching down in Salt Lake City. ¶¶30-34. The medical situation remained stable, and diverting to a small mountain airport, at night, was not a plausible course of action. ¶34. Banish did not alter flight operations or do anything differently because of Dunn's comments. ¶39.

- Banish did not preserve the cockpit voice recording that captured Dunn's comments, despite Federal law and Delta policy requiring Banish to preserve that recording if an incident threatening crew safety had occurred. ¶¶43-47.

- After landing, Banish left Dunn alone with the passengers, which would be unthinkable if Banish's accusations were true. ¶42.

- Banish told Miller and Cink about Dunn's comments, including that Dunn was joking. ¶¶50, 53, 128c. Neither person took steps to preserve the cockpit voice recording, despite having the ability to do so. ¶¶51-53.

- Days later, Banish told the FBI that Dunn "essentially" joked—a filler word Banish uses,

*see* Opp. 3 n.2—and implied that nothing serious happened. ¶61. Banish said he was making the report, not because he believed Dunn interfered with his duties or attempted to take over the cockpit using his firearm, but because he thinks Dunn is not "normal." ¶61.

- During criminal proceedings against Dunn, Banish and his co-defendants traded jokes about Dunn, inconsistent with any sincere belief that Dunn was guilty of a serious crime. ¶¶95, 99.

These allegations, along with others, *see, e.g.*, Compl. ¶¶31-34, 36-37, 40 (context surrounding Dunn's remark and Banish's reaction to it), at least "plausibly" show that Defendants knew Dunn had not committed the crimes Banish later accused him of. *Iqbal*, 556 U.S. at 678. As a result, Dunn's complaint adequately pleads that Defendants acted in bad faith and with actual malice in defaming and maliciously prosecuting Dunn. Compl. ¶¶126, 128-129, 142c-143.

Dunn also adequately pleads that Defendants played the driving role in causing and continuing Dunn's prosecution. Dunn's complaint recounts the events in detail:

- Cink and Miller used Dunn's disciplinary interview to deceive Dunn and elicit incriminating statements to use against him. Compl. ¶73. The government later used those statements to advance Dunn's prosecution. ¶74.

- In Banish's December 2022 interview with the prosecutor, Banish said he "did not know" whether Dunn was joking but repeatedly stated that Dunn didn't interfere with his duties "in any way." Compl. ¶89. No prosecution resulted from that interview. ¶¶89, 91.

- Sometime later, Banish told investigators that he "did not consider" Dunn's comments a joke, and that he was "concerned if [he] diverted to Grand Junction, [Dunn] would use his weapon to relieve [Banish] of command." ¶¶90, 96. Dunn was indicted almost a year after Banish's first interview, where he denied that Dunn interfered with any contingency planning for a diverted landing. Compl. ¶91.

- After Dunn's criminal defense attorney received a transcript of Banish's December 2022 interview—where Banish denied an essential element of the offense—he met with the United States attorney to convince her office to drop the case. ¶100. That prompted the prosecutor to interview Banish again in January 2024 to see if Banish would testify to the facts needed for a conviction. ¶101.

- In that interview, Banish stated that he didn't consider Dunn's comments a joke and that Dunn affected his decision-making because Banish feared he would have to decide between diverting or getting shot. ¶101. To support Banish's interference claim, Cink offered to provide false expert testimony that diverting to Grand Junction was rational and consistent with Delta policy, even though Delta policy expressly forbids diverting in these circumstances and the flight was only a short distance from Salt Lake City. ¶¶32-34, 103-106.

4

- Banish's and Cink's knowingly false statements convinced the government to take Dunn's case to trial. ¶106. On the apparent strength of those false statements, the prosecutor did not even present Dunn the option of pleading to a lesser offense. ¶106.

- As soon as the government received a recording of Banish's FBI call, where Banish admitted Dunn was joking and implied that nothing serious occurred, it promptly moved to dismiss Dunn's indictment. The motion cited "previously unknown evidence" and explained that it "no longer believe[d] it c[ould] prove all the elements of the charged offense beyond a reasonable doubt." ¶¶107-109.

These detailed allegations dispel Defendants' argument that Dunn's prosecution resulted from federal investigators' independent discretion. If Banish and Cink had told the truth, Dunn would never have been indicted, or his criminal case would have ended sooner.

Defendants wrongly assert that various facts are not in dispute. They repeatedly claim that Dunn doesn't dispute Banish's false and inflammatory account of what Dunn said. *See, e.g.,* Reply 1, 11, 12, 13 n.7. That is incorrect: Dunn "vigorously disputes Defendants' characterization of the words he used." Opp. 1 n.1. Defendants also incorrectly assert that Dunn doesn't dispute the contents of their exhibits. Reply 1. Banish's statements in those exhibits are untested and provide only his side of the story. A jury is entitled to conclude that Banish's story was false. And contrary to Defendants' assertion, Dunn's counsel in this matter had no previous access to Defendants' sealed exhibits because of the protective order in Dunn's criminal case, which Dunn and his counsel have scrupulously followed. *See* Reply at 17 n.12; Dkt. 32, *United States v. Dunn*, No. 2:23-cr-375-HCN-JCB-1 (D. Utah Feb. 9, 2024).

## II.  Defendants' Merits Arguments Fail.

Fact disputes aside, Defendants raise few legal arguments against Dunn's malicious prosecution and defamation claims. Those arguments fail.

### A.  Dunn States Claims for Malicious Prosecution.

Defendants' reply raises two legal challenges to Dunn's malicious prosecution claims, but neither has merit. Defendants first argue that the prosecutor's "assessment of probable cause" vitiates

Defendants' *lack* of probable cause. Reply 29. The Utah Supreme Court warned against that faulty reasoning. *See Neff v. Neff*, 247 P.3d 380, 396 n.34 (Utah 2011). The court emphasized "the importance of analyzing probable cause from the perspective of the accuser," not the prosecutor, because "the accuser … may know facts that would wholly defeat probable cause but that remain unknown to the prosecution at the time of trial." *Id.* Thus, the probable cause inquiry focuses on the conduct of "'the person *responsible* for initiating [or continuing] the action," not the prosecutor's decision to file charges. *Hodges v. Gibson*, 811 P.2d 151, 158 (Utah 1991) (emphasis added); *see, e.g., Pettit v. Maxwell*, 509 S.W.3d 542, 550-51 (Tex. Ct. App. 2016) (collecting cases); *see also* Restatement (Second) of Torts §653 cmt. g ("If … the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information").

Defendants next argue that the criminal proceedings did not terminate in Dunn's favor because his charge was dismissed "without prejudice" and thus "didn't indicate Dunn's innocence." Reply 31. Both cases they cite—*Neff* and *Puttuck v. Gendron*, 199 P.3d 971 (Utah Ct. App. 2008)—cut against them. *Neff* adopts the Second Restatement's approach to favorable termination. 247 P.3d at 394. Under the Restatement, favorable termination occurs when "a conviction has … become impossible or improbable" and the prosecutor "formally abandon[s] the prosecution … by a motion to dismiss the complaint." §§660(b) cmt. d; 659(c) cmt. e. That describes the end of Dunn's criminal proceedings to a tee. *See* Compl. ¶109. Favorable termination does not require dismissal with prejudice. *See* Restatement (Second) of Torts §659(c) (abandonment); *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 754 (N.Y. 2000) (collecting cases). And *Gendron* does not say otherwise, despite Defendants repeatedly misciting that case. *See* 199 P.3d at 975 (discussing "wrongful use of civil proceedings"); *see also* Opp. 10-11 (describing Defendants' mischaracterization of *Gendron*).

**B. Dunn States Claims for Defamation.**

Banish defamed Dunn, expressly and by implication, when he accused Dunn of serious crimes. Opp. 12-13; *see Baum v. Gillman*, 667 P.2d 41, 42-43 (Utah 1983) (false accusations of crimes are defamatory per se). In reply, Defendants repeat their argument that Banish's accusations are non-actionable because they cannot be objectively verified. Reply 24. But whether Dunn assaulted Banish, interfered with his duties, or attempted to take over the aircraft are plainly facts "capable of being objectively verified as true or false." *West v. Thomson Newspapers*, 872 P.2d 999, 1018 (Utah 1994); *see* Opp. 14. Indeed, the prosecutor would have had to prove those facts to convict Dunn. Defendants can't sweep away Banish's statements about his or Dunn's state of mind. *See* Reply 26. False claims about what a person knows (or does not know) can be defamatory. *See Gray v. St. Martin's Press*, 221 F.3d 243, 249 (1st Cir. 2000). And it does not matter whether those statements are themselves actionable, because Defendants' liability depends on whether "the *implication*" of those statements is capable of objective verification. *West*, 872 P.2d at 1018. That there may be "nondefamatory facts underlying the implication" is irrelevant. *Id.* Understood in full context, Banish's statements—including that he "didn't know" if Dunn was joking and that Dunn "intimidated" him—were defamatory because he implicitly accused Dunn of assault. Opp. 15. His later statements that Dunn "interfered with his decision-making" and attempted to take over the aircraft with his firearm were defamatory because Banish expressly accused Dunn of a much more serious crime. Opp. 14.

Defendants also argue that official reports of Banish's statements to federal investigators do not support Dunn's allegations that Banish made those statements. *See, e.g.*, Reply 17 n.2, 18. This argument ignores the standard of review. It is undoubtedly "plausible" that these reports—a court filing and a federal prosecutor's official summary—accurately reflect what Banish said. *Iqbal*, 556 U.S. at 679; *see also* Compl. ¶¶97, 102 (alleging Banish made these statements). After discovery, Defendants will have the opportunity to show that the reports are mistaken and that Banish did not make the

defamatory statements the reports attribute to him. *Cf. Walter v. Jet Aviation Flight Services*, 2017 WL 3237375, *6 (S.D. Fla. July 31, 2017) (denying summary judgment because "while [the facts produced in discovery] do not establish conclusively who said what …, they do support the reasonable inference that" the defendant made defamatory statements). Resolving that fact dispute at this stage is premature.

Defendants selectively quote their exhibits to advance their arguments. For example, Defendants heavily quote Banish's statement declining to advise the prosecutor's charging decision. But they ignore that Banish raised the issue of potential charges and redirected the prosecutor to that question when another investigator interrupted the answer. *See* Mtd Ex. A at 93-95. They also ignore that the prosecutor concluded from Banish's statements that he could probably charge Dunn with assault. *Id.* at 96-97; *see also Hogan v. Winder*, 762 F.3d 1096, 1106 (10th Cir. 2014) (effect on reasonable listener supports finding of defamation-by-implication). Defendants' exhibits show that the prosecutor told Banish why he couldn't charge Dunn with felony interference with a flight crew but said he would consult with Banish before any charging decision. Mtd Ex. A at 95-99. Banish later accused Dunn of exactly the conduct that the prosecutor needed to establish the missing element—interference with Banish's duties. *See* Mtd Ex. D at 4. Defendants' exhibits far from exonerate Banish.

## III.    No Privilege or Immunity Shields Defendants from Liability.

Defendants argue that ATSA, Utah's judicial proceedings privilege, and the First Amendment's Petition Clause shield them from liability. But these privileges and immunities do not apply to defendants who act in bad faith.

### A. ATSA Immunity Does Not Cover Defendants' Bad-Faith Disclosures.

ATSA does not "shield airlines from civil liability for disclosures made in bad faith." *Hansen v. Delta Airlines*, 2004 WL 524686, *8 n.9 (N.D. Ill. Mar. 17, 2004); *see* 49 U.S.C. §44941(b) (no immunity for disclosures made with "actual knowledge that the disclosure was false, inaccurate, or misleading"

or with "reckless disregard as to the truth or falsity of that disclosure"). Dunn's detailed complaint shows Banish had actual knowledge that his accusations against Dunn were false, inaccurate, and misleading. *Supra* 3-4. ATSA therefore does not immunize those statements. And because Defendants' theory of ATSA immunity for Cink, Miller, and Delta rests entirely on whether Banish has immunity, ATSA does not shield them from liability either. *See* Mtd 21-23; Reply 14-15; *see also* Opp. 19-20 (identifying other reasons why ATSA does not immunize Cink, Miller, and Delta).

Defendants don't respond to Dunn's arguments based on ATSA's text and precedent, which foreclose Defendants' theory that only a defendant's first disclosure counts when assessing whether ATSA immunity applies. *See* Opp. 19. They cite *Bandary v. Delta Air Lines* to support their overbroad theory, but that case is inapposite. *See* 2019 WL 9244788 (C.D. Cal. Oct. 11, 2019). That court concluded that a defendant who enjoys ATSA immunity for a qualifying statement cannot be held liable "for the independent actions of law enforcement" resulting from the immunized statement. *Id.* at *3. But here, Dunn's prosecution resulted from Banish's and Cink's statements to the prosecutor, not from Banish's FBI report, and those knowingly false statements are not immune. Defendants' makeweight theory—that once a person makes an initial disclosure, ATSA immunizes later statements that are knowingly false, inaccurate, and misleading—is atextual and illogical.

Defendants incorrectly claim that Dunn misapplies ATSA's materiality standard when he explains that Banish's false statements drove Dunn's prosecution. Reply 7. A false statement is material for ATSA purposes if there is a "substantial likelihood that a reasonable [government official] would consider it important in determining a response to the supposed threat." *Air Wisconsin Airlines v. Hoeper*, 571 U.S. 237, 252 (2014). When answering that question, courts must consider "the effect of that statement on [the government's] behavior." *Id.* As Dunn explained in his opposition brief, any "'reasonable' prosecutor would 'consider it important'" whether Dunn was joking and whether he interfered with Banish's duties, as both claims bear on the offense Dunn was charged with. Opp. 18. The

fact that the government decided to charge Dunn and proceed to trial based on Banish's false statements supports that conclusion and follows the Supreme Court's instruction to consider a false statement's effect on the government's behavior.

### B. The Judicial Proceedings Privilege Does Not Protect Bad Faith Conduct.

Under the *Moss* exception, Utah's judicial proceedings privilege does not apply if a person "committed fraud or otherwise acted in bad faith" in the proceeding. *Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1166 (Utah 2012). That privilege does not apply here because Banish defamed Dunn with actual malice and knowledge that his accusations were false. *Supra* 3-4.

Defendants incorrectly argue that the *Moss* exception applies only to attorney misconduct. Reply 19-20. In *Peterson v. XPO Logistics*, the Tenth Circuit surveyed decisions of the Utah Supreme Court and rejected that argument. 812 F. App'x 754, 757-58 (10th Cir. 2020). The court explained that, because "the judicial proceedings privilege applies to all participants of the litigation," the Utah Supreme Court would conclude that the *Moss* exception "also appl[ies] to all participants." *Id.* at 759. Defendants resist that well-reasoned (but unpublished) conclusion by arguing that two Utah Court of Appeals decisions after *Peterson* held that "excessive publication" is the "only exception [to the judicial proceedings privilege] for parties/litigants." *See* Reply 19-20 ("the Tenth Circuit guessed wrong"). Defendants are mistaken. In *Lavender v. FCOI Preserve*, the court refused to apply the judicial proceedings privilege to shield a defendant who "knowingly fil[ed] false documents" in a title dispute and offered *no* discussion of exceptions to the privilege. *See* 2025 UT App. 47, ¶¶85-91. And while *Rain Focus v. Cvent* discusses the excessive publication exception, nothing in that opinion suggests that exception is the only one. *See* 528 P.3d 1221, 1227-30 (Utah Ct. App. 2023). The *Peterson* court correctly concluded that the *Moss* exception applies to all participants in a judicial proceeding.

### C. Petition Clause Immunity Does Not Apply.

The Petition Clause does not immunize Defendants from malicious prosecution. Defendants

argue that a two-part "sham petitioning" test determines whether the immunity applies, Reply 17, but that test applies to wrongful civil suits, *see, e.g., BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 519 (2002) (labor); *Professional Real Estate Investors v. Columbia Pictures*, 508 U.S. 49, 51 (1993) (antitrust). Indeed, Defendants fail to cite a case where a court even considered Petition Clause immunity for a wrongful criminal prosecution.[1]

The Court should not recognize Petition Clause immunity for malicious prosecution. Doing so would fundamentally alter a tort whose elements have remained generally stable since before the Founding. *See Thompson v. Clark*, 596 U.S. 36, 44 (2022) (quoting Thomas M. Cooley, *Law of Torts* 181 (1880)) (malicious prosecution traditionally requires that "(i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious,' which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.'"); *see also Saville v. Roberts*, 1 Ld. Raymond, 374 (1678) (recognizing the tort in modern form). The traditional elements of malicious prosecution have existed alongside the First Amendment since the Bill of Rights was ratified. *See Thompson*, 596 U.S. at 45-47 (discussing cases). On Defendants' view of the Petition Clause, however, a malicious prosecution plaintiff would have to also show that the prosecution lacked "an objectively reasonable basis." Defendants' cursory briefing on this issue does not warrant the innovation.

Defendants take their test from *CSMN Investments v. Cordillera*, but that case involved a claim of an improper civil suit. *See* 956 F.3d 1276, 1281 (10th Cir. 2020) (ADA and FHA claims); *see also id.* at 1286 n.13 (citing more civil cases). Wrongful civil litigation has long been treated differently than

---

[1] In their motion to dismiss, Defendants cite *GoSecure Inc. v. Bhandari,* 637 F.Supp.3d 368, 380 (E.D. Va. 2022), as a case about Petition Clause immunity from a malicious prosecution claim. Mtd 23 n.7. But that case involves malicious *civil* prosecution. *See* 637 F.Supp.3d at 373.

wrongful criminal prosecution. *See, e.g., Woodmansie v. Logan*, 2 N.J.L. 86, 87 (1806) ("it is clearly established … that for commencing a civil action, though without sufficient cause, no action on the case for malicious prosecution will lie"). Here, blurring the civil-criminal distinction would bring the Constitution into conflict with itself. The Fourth Amendment *forbids* malicious criminal prosecution as that tort is traditionally defined. *See Thompson*, 596 U.S. at 42. But on Defendants' view, the First Amendment *protects* that very same conduct. *CSMN* does not compel that odd result. *See Reichert v. Draud*, 511 F.Supp. 679, 684 (E.D. Ky 1981) ("The First Amendment cannot be construed in a vacuum. It must be read in context with the remainder of the bill of rights and the Constitution as a whole.").

If Petition Clause immunity exists in this context, its limit is the "actual malice" standard that applies to defamatory petitioning. *See McDonald v. Smith*, 472 U.S. 479, 485 (1985).[2] Malicious prosecution is "analogous to the action for libel and slander" because in addition to recovering legal fees, it redresses "a wrong to [the plaintiff's] character or reputation." 1 Francis Hilliard, *The Law of Torts or Private Wrongs* 412 (1866). The actual malice test harmonizes Petition Clause immunity with the traditional elements of malicious prosecution and is "consistent with the limitations imposed by other First Amendment rights." *Scott v. Hern*, 216 F.3d 897, 914 (10th Cir. 2000). Because Defendants maliciously prosecuted Dunn knowing that Banish's accusation was false, *see supra* 3-4, their actual malice precludes any immunity under the Petition Clause.

Even if *CSMN*'s objective reasonableness test were to apply, Defendants' prosecution of Dunn would flunk it. Litigation is not objectively reasonable if it is "baseless." *CSMN*, 956 F.3d at 1287; *see also id.* ("baseless suits are 'analogous to false statements'"). Dunn's prosecution was based

---

[2] Defendants do not appear to dispute that malice is the appropriate standard to assess Petition Clause immunity for Dunn's defamation claims. *See* Reply 16 (citing *McDonald*, 472 U.S. 479).

on Banish's false accusations. Banish was the sole complaining witness, and without his false testimony, "no reasonable litigant"—here, the prosecutor—"could realistically expect to secure favorable relief." *Id.* Petition Clause immunity protects only "'genuine petitioning.'" *Id.* at 1283 (quoting *BE & K*, 536 U.S. at 525-26). Even if Defendants' conduct could be classified as petitioning activity, it was not genuine because they initiated and continued Dunn's criminal proceedings in bad faith.

## IV.  UPEPA Does Not Apply in Federal Court.

UPEPA is a state law of procedure that does not apply in federal court. *Los Lobos Renewable Power v. Americulture*, 885 F.3d 659, 670 (10th Cir. 2018); *see* Opp. 20-22. For the first time in their reply, Defendants argue UPEPA is substantive because it "contains a burden-of-proof shifting requirement." Reply 7. They also cite UPEPA's rule-of-construction provision instructing courts to interpret the statute broadly in light of its purpose. *Id.* Neither is ground to distinguish *Los Lobos* or apply UPEPA here.

To start, Defendants waived their argument that a burden shifting requirement applies to their motion to dismiss. Defendants never mentioned burden shifting in their motion, nor identified any burdens that should be shifted to Dunn. To the contrary, they stated that Dunn's claims should be "dismissed pursuant to [Federal] Rule 12(b)(6)." Mtd 3. Defendants' burden shifting argument thus is not only new, but it is also incompatible with their earlier position. It is waived for both reasons. *See Sexton v. Poulsen & Skousen*, 372 F.Supp.3d 1307, 1318 n.9 (D. Utah 2019) (new arguments raised in a reply brief are "waived"); *United States v. Shamo*, 36 F.4th 1067, 1075 (10th Cir. 2022) (inconsistent positions are "waived").

Defendants also waived their burden shifting argument by failing to develop it. *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner ... are waived"). They don't explain where in UPEPA's text they find a burden shifting requirement, nor

describe how the burden shifting might work. *See* Reply 7. No court in a reported decision has interpreted UPEPA's standard of review provision, and the only court to apply it followed Federal Rule 12(b)(6). *See UHS of Provo Canyon v. Bliss*, 2024 WL 4279243, at *6 (D. Utah Sept. 24, 2024). Defendants ask the Court to reach a novel interpretation of Utah's anti-SLAPP law without so much as quoting the relevant text.

And even assuming a burden shifting requirement exists, Defendants provide no analysis of the "complex" *Erie* issues that must be resolved to decide if the requirement applies in federal court. *Los Lobos*, 885 F.3d at 668; *see, e.g., Carbone v. CNN*, 910 F.3d 1345, 1349-57 (11th Cir. 2018). Defendants instead rely on two district court cases holding that Kansas's and Colorado's anti-SLAPP laws apply in federal court. *See* Reply 7. But each state's anti-SLAPP law "'must be evaluated separately.'" *Los Lobos*, 885 F.3d at 672 n.7 (quoting *Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 799 (9th Cir. 2012)). There are well-reasoned circuit court opinions that reject federal application of the types of burden shifting requirements that Defendants say UPEPA "contains." *See Carbone*, 910 F.3d at 1356; *Abbas v. Foreign Policy Group*, 783 F.3d 1328, 1333-34 (D.C. Cir. 2015) (Kavanaugh, J.); *see also Barnett v. Hall, Estil, Hardwick, Gable, Golden & Nelson*, 956 F.3d 1228, 1237 (10th Cir. 2020) (finding *Abbas* "persuasive").

Even if Defendants' standard-of-review argument were properly before the Court, it would fail. If UPEPA shifts some unspecified burden, Federal Rule 12(b)(6) trumps that provision. *See Carbone*, 910 F.3d at 1357; *Abbas*, 783 F.3d at 1333-34. Rule 12(b)(6) burdens the "defen[dant]" to show that the plaintiff "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under *Erie,* if "a federal rule of civil procedure answers the question in dispute, that rule governs" so long as it "does not 'exceed[] statutory authorization or Congress's rulemaking power.'" *Racher v. Westlake Nursing Home*, 871 F.3d 1152, 1162 (10th Cir. 2017) (quoting *Shady Grove Orthopedic v. Allstate*

*Ins.*, 559 U.S. 393, 398 (2010)). Thus, for UPEPA's supposed burden shifting provision to apply, Defendants would need to show that applying Federal Rule 12(b)(6) would be "unconstitutional" or "exceed the scope of the Enabling Act." *Smith v. Vicorp*, 107 F.3d 816, 818 (10th Cir. 1997); *see Hanna v. Plumer*, 380 U.S. 460, 471 (1965). The "Federal Rules of Civil Procedure are presumptively valid." *Smith*, 107 F.3d at 818 (citing *Burlington N. R.R. v. Woods*, 480 U.S. 1, 5 (1987)). Defendants cannot rebut that presumption here.

Finally, UPEPA is not a substantive law just because its rule of construction protects substantive rights. "The very basis for procedural rules is the protection of substantive rights." *In re Chanticleer Assocs.*, 592 F.2d 70, 75 (2nd Cir. 1979). Rights under the United States and Utah constitutions apply in this case by their own force. And although Defendants raised First Amendment defenses to Dunn's claims for malicious prosecution and defamation, they did not argue that UPEPA enlarged those rights in any way. Nor do Defendants identify any ambiguity in UPEPA's text for the Court to resolve with the rule of construction. That provision is not a basis to apply UPEPA in federal court.

## **CONCLUSION**

The Court should deny Defendants' motion to dismiss.

Dated: July 2, 2025                         Respectfully submitted,

                                         */s/ Matt Pociask*
                                         Tyler Green (Utah Bar No. 10660)
                                         Patrick Strawbridge*
                                         Matt Pociask*
                                         CONSOVOY MCCARTHY PLLC
                                         222 S. Main Street, 5th Floor
                                         Salt Lake City, UT 84101
                                         (703) 243-9423
                                         tyler@consovoymccarthy.com
                                         matt@consovoymccarthy.com
                                         patrick@consovoymccarthy.com

                                         *admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this document through the Court's CM/ECF system on July 2, 2025, which will automatically serve counsel for all parties.

/s/ Matt Pociask
Matt Pociask