Rick Thaler (7002)
David Dibble (10222)
Katherine Priest (14758)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: rthaler@rqn.com
ddibble@rqn.com
kpriest@rqn.com

*Attorneys for Defendants Delta Air Lines, Inc., Robert Banish, Kevin Miller, and Brian Cink*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JONATHAN DUNN,<br><br>        Plaintiff,<br><br> v.<br><br>DELTA AIR LINES, INC., ROBERT BANISH, KEVIN MILLER, and BRIAN CINK,<br><br>        Defendants. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY**<br><br>Case No.: 2:24-cv-00967-HCN<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Dustin B. Pead |

Pursuant to DUCivR 7-1(a)(4)(D), Defendants Delta Air Lines, Inc. ("Delta"), Robert Banish ("Captain Banish"), Kevin Miller ("Miller"), and Brian Cink ("Cink") (collectively "Defendants"), by and through undersigned counsel of record, submit this memorandum in opposition to Plaintiff's Motion for Leave to File Surreply (the "Motion") (Dkt. 52).

# INTRODUCTION

Dunn, apparently unhappy with his first attempt to oppose Defendants' Motion to Dismiss, now impermissibly seeks a second bite at the "apple."[1] Dunn's Motion is based on two grounds – that Defendants (1) raised new arguments in reply and (2) mischaracterized case law, Dunn's opposition, and Defendants' exhibits.  Both are wrong.

Every argument cited by Dunn as purportedly new is in fact an argument raised in Defendants' Motion to Dismiss, responded to in Opposition, and/or rebutted in Reply. First, Dunn argues that whether UPEPA should be applied in federal court because it utilizes a substantive burden-shifting model was raised for the first time. Yet as set forth below, UPEPA's application in federal court was the subject of extensive back and forth briefing. Next, Dunn argues that the two-part "sham-petitioning" test to overcome Petition Clause immunity was raised for the first time. As set forth below, however, Defendants properly addressed that issue on reply, in direct response to arguments raised by Dunn. Finally, Dunn contends that his failure to allege that Captain Banish made the defamatory statements that federal reports attribute to him is raised for the first time.[2] (*Id*.) That too was raised extensively in the motion to dismiss. In the

---

[1] Dunn complains that he "received only 25 pages" to respond to Defendants' Motion to Dismiss, while Defendants were "allowed 67 pages to make their arguments." (Dkt. 52 at 4.) But Defendants, with permission of the Court, filed their Motion to Dismiss and reply articulating their full arguments with respect to the deficiency of Dunn's Claims *as relates to four separate defendants*. If Dunn thought he needed additional space to fully brief his arguments in opposition to Defendants' Motion to Dismiss, he could have requested additional pages, but he did not.

[2] Dunn for the first time argues that his counsel "had no access to, and had not reviewed, the vast majority of the material in Defendants' exhibits" until Defendants filed their Motion to Dismiss. (Motion at 2, n. 1.) This assertion is surprising, given that: (1) Dunn appears to quote directly from such exhibits in his Complaint, (Compl. at ¶ 141); (2) Dunn does not contest Defendants' citation to those exhibits; and (3) Dunn cites the exhibits in opposing Defendants' Motion to Dismiss.

end, none of these arguments are new to Defendants' reply. Defendants raised these arguments in their opening brief, Dunn addressed them in his opposition, and in their reply brief Defendants showed that Dunn's opposition arguments were unavailing. Thus, the briefing unfolded as contemplated by the rules, and there is nothing that warrants ignoring the rules to give Dunn the "last word" on these issues. Nor have the Defendants mischaracterized anything. At most, Dunn notes that the parties disagree on their reading of cases. That is not "misrepresentation" that the Court cannot resolve without additional briefing. Rather that is ordinary disagreement that every litigant encounters when arguing cases and that courts resolve by reading the ordinary motion papers and the cases supporting them.

Accordingly, Dunn's motion to file a surreply should be denied and his proposed surreply should not be considered.

## ARGUMENT

### I. STANDARD

Neither the Federal Rules of Civil Procedure nor this District's local rules allow for surreplies as a matter of right. *See* Fed. R. Civ. P. 7; DUCivR 7-1. Surreplies are permitted only with leave of court and after good cause is shown. *See, e.g., James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 902 (D. Kan. 2021). Defendants' reply, which simply responded to arguments in Dunn's opposition, does not warrant a surreply. Indeed, "a reply which merely responds to matters placed in issue by the response, and does not spring upon the opposing party new reasons" underlying the request for relief "is entirely proper." *Id.* at 904 (citations and quotations omitted). To that end, "a reply 'may properly highlight the deficiencies' in a response without opening the door to additional pleadings." *Id.* (citations omitted). Furthermore, a reply that cites

new cases in support of legal theories already raised in an opening brief likewise does not justify a surreply. *See id*. at 903-04. And a surreply may not be used by a party to make arguments for the first time. *Id*. at 903.

II.     **A SURREPLY IS UNWARRANTED BECAUSE DEFENDANTS MADE NO MISREPRESENTATIONS AND RAISED NO NEW ARGUMENTS.**

   A.     Defendants Correctly Argue that Dunn Misapplies the ATSA Immunity Standard.

Dunn's principal weakness is *Air Wisconsin*. To avoid the plain holding of that case and justify an unnecessary surreply, Dunn argues Defendants "obfuscate" and mischaracterize the *Air Wisconsin* case when they assert that Dunn misapplies the materiality standard. (Dkt. 52 at 3-4.) In other words, Dunn would stretch *Air Wisconsin* to require a subjective inquiry into the mind of specific government actors, as opposed to an objective one. The argument is incorrect and in any event fails to justify a surreply.

Substantively, Dunn's argument makes no sense because it relies on an omission. Specifically (and for the second time), he omits the key language from *Air Wisconsin* to insinuate that courts must look to the subjective effect on specific government actors, like individual prosecutors. In arguing this false holding, Dunn twice leaves off the critical parts of the quote which make clear that the test applies to a "*reasonable security official*" – clearly an objective legal standard. *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 252 (2014) (quotations and citation omitted) (emphasis added). To be sure the Court's holding is clear: "[t]his standard 'is an objective one, involving the [hypothetical] significance of an omitted or misrepresented fact to a reasonable' security official, rather than the actual significance of that fact to a particular security official." *Id.* (citation omitted) (alteration in original). Dunn ignores this clear holding to instead focus only on the unremarkable idea that in making this objective

4

determination, courts consider the facts of the specific situation. Defendants' analysis is correct: the question here is whether there is a "substantial likelihood" that a reasonable security officer would consider whether Dunn was joking to be "important in determining a response to the proposed threat." *Id*. The Second Circuit resolved this question in *Baez v. JetBlue Airways Corp.*, when it held that the airline employee's report to security officials was not materially false, even though the employee did not think the passenger posed a serious threat. 793 F.3d 269, 274-76 (2d Cir. 2015). But spilling more ink will not change those holdings. And this Court is capable of reviewing *Air Wisconsin* and *Baez* itself without the need for more briefing.

    B.    <u>Defendants' UPEPA Argument is not New</u>.

Next, Dunn argues that Defendants raise for the first time in their reply that Utah's UPEPA law is substantive because "it contains a burden-of-proof shifting requirement." (Motion at 3.) Defendants plainly state in the Motion to Dismiss that UPEPA applies in "federal diversity actions because it exists to influence substantive outcomes and is so bound up with the state-created right or remedy that it defines the scope of the substantive right or remedy." (Dkt. 19 at 13 (quoting *Caranchini v. Peck*, 355 F.Supp.3d 1052, 1061 (D. Kan. 2018).) *Caranchini* distinguishes the Kansas anti-SLAPP statute from the New Mexico anti-SLAPP statute (ruled on in *Los Lobos*) and specifically states that "statutes that shift burdens of proof—like the Kansas Act—are more substantive in nature than the New Mexico statute, and more likely to apply in federal diversity action." 355 F. Supp. 3d at 1061. In his opposition brief, Dunn acknowledged that "anti-SLAPP laws that 'shift substantive burdens of proof or alter substantive standards, or both" may apply in federal diversity cases but argues that UPEPA is more akin to New Mexico's anti-SLAPP law rather than any substantive version in another state. (Dkt. 35 at 21-22 (citing

5

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018).)

In reply to Dunn's arguments, Defendants noted that the Utah anti-SLAPP statute contains a burden-shifting framework (and other substantive features), like the anti-SLAPP statutes applied in federal court. (Dkt. 46 at 7.) In short, Delta raised the substantive argument in its opening brief, Dunn responded to it (perhaps, in retrospect, not as thoroughly as he would have liked), and Defendants addressed Dunn's opposition arguments in its reply. Dunn simply now wants an opportunity to make arguments he could have made earlier.

More importantly, the cases are clear in their holdings. And a surreply is unnecessary for this Court to complete its analysis of whether UPEPA applies.

  C. <u>Defendants' Petition Clause Immunity Argument is not New</u>.

In their Motion to Dismiss, Defendants asserted that Petition Clause immunity barred Dunn's claims because "Captain Banish's reports [to law enforcement] are all protected petitions for government redress and are immune from liability." (Dkt. 19 at 23, n. 7.) In response, Dunn argued that the Tenth Circuit has not recognized Petition Clause immunity "in this context" and that it could not cover false statements to investigators. (Dkt. 35 at 20, n. 9.) And if it did apply, Defendants' conduct would not be immunized "because they acted with 'malice.'" (*Id.*) In response, Defendants noted the broad application of immunity to petitions to the government and explained that litigants are immune unless their "petitioning is a sham." (Dkt. 46 at 16-17.)

Dunn now argues that Petition Clause immunity should not extend to claims for malicious *criminal* prosecution. First, if anything it is Dunn's argument that is raising new issues for the first time. Second, the argument is without merit substantively as federal courts have recognized the application of Petition Clause immunity to tort claims for malicious criminal

prosecution. *See, e.g., Burke v. Bachert*, 702 F. Supp. 3d 347, 359 (E.D. Pa. 2023) (analyzing application of sham litigation exception in claim for malicious criminal prosecution). In any event, the Defendants' petitioning activity is immune from claims for malicious prosecution and defamation, regardless of whether the Court applies the "sham litigation" or actual malice standard.[3]

> D. Defendants Properly Refer to and Incorporate the Exhibits to the Motion to Dismiss and do not Make any New Argument About Dunn's Failure to Quote Captain Banish.

Dunn falsely argues that Defendants raised for the first time in their reply that Dunn "failed to allege that Banish made defamatory statements that official federal reports attribute to him." (*Compare* Motion to Dismiss, at 25, n. 8 ("[T]he alleged defamatory statements in paragraphs 2 and 3 are not quotes of Captain Banish's actual statements. Rather, the Detention Memorandum contains law enforcement's arguments and the Jan. 29 Summary explicitly paraphrases the contents of the interview and is not a 'verbatim account'") *with* Reply, at 17, n. 12 ("Dunn does not specifically allege that Captain Banish made this statement. Rather, Dunn implies Captain Banish must have made such a statement because the United States made such a representation in a Court filing on Dec. 29, 2023.").)

Dunn also argues that Defendants "repeatedly assert that Dunn's factual allegations are incorrect," which he contends is contrary to the Rule 12(b)(6) standard on a motion to dismiss (Surreply at 3.) But Defendants' arguments about the lack of proper attribution for Captain

---

[3] Dunn asserts that application of Petition Clause immunity to civil tort claims for malicious criminal prosecution would conflict with the Fourth Amendment, but that is incorrect. Defendants have never argued that such immunity is absolute or that all petitions to the government are immune from claims for malicious prosecution.

7

Banish's statements (and other challenges to Dunn's unsupported and conclusory allegations) present no question of fact but rather highlight that Dunn has not met his pleading standard, requiring dismissal of his claims pursuant to Fed. R. Civ. P. 12(b)(6).

Indeed, "a court simply cannot determine whether a statement is capable of sustaining a defamatory meaning by viewing individual words in isolation; rather, it must carefully examine the context in which the statement was made, giving the words their most common and accepted meaning." *West v. Thomson Newspapers*, 872 P.2d 999, 1009 (Utah 1994). And, when reviewing claims of defamation that are dismissed for failure to state a claim, courts "look to the context of the allegedly defamatory statement and then, in a non-deferential manner, reach an independent conclusion about the statement's susceptibility to a defamatory interpretation." *Spencer v. Glover*, 2017 UT App 69, ¶ 5, 397 P.3d 780, 783–84; *see also Turner v. Wells*, 879 F.3d 1254, 1263, 1267 (11th Cir. 2018) (admonishing plaintiff for "cherry pick[ing] statements . . . out of context").

In considering whether a complaint contains sufficient factual matter to state a claim pursuant to Rule 12(b)(6), the Court considers the contents of the complaint **and** "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, where no party disputes the authenticity; and matters of which a court may take judicial notice." *Clinton v. Security Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (citations omitted) (cleaned up) (recognizing the court "need not accept . . . allegations plainly contradicted by properly considered documents or exhibits); *see also Cates v. Crystal Clear Tech., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (instructing that "'[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the

8

allegations'"); *Hardman*, 2019 WL 2578586, at *3 (granting motion to dismiss as the recording of the alleged interaction underlying plaintiff's claims clearly contradicted the plaintiff's stated allegations).

Thus, it is entirely appropriate for the Court to consider Captain Banish's actual statements as opposed to the summaries of his statements in ruling on Defendants' Motion to Dismiss.

E. <u>Defendants do not Misrepresent Dunn's Undisputed Statements</u>.

In a sleight of hand, Dunn argues that Defendants falsely claim that he does not dispute the characterization of his statements to Captain Banish during the flight at issue. (Motion at 3.) In fact, however, as Defendants have consistently pointed out, Dunn has **never once** disputed that he told Captain Banish that he would shoot him no less than 46 times and would tell those that listened to the CVR that he shot Captain Banish so many times because he kept twitching. (See generally Compl. and Opposition.) Dunn, of course, shirks responsibility for these outrageous statements by claiming he was joking, but he **does not** dispute the words he said. Even now, Dunn carefully states that he disputes Defendants' "characterization" of Dunn's words, but not the actual words themselves.

Defendants, on the other hand, have not argued that Dunn agrees with their characterization of his statements, and Dunn's strawman argument in his surreply serves only as another of Dunn's intended distractions from the controlling law and facts. Indeed, it is telling that Dunn did not plead, and now does not otherwise offer, an alternative recounting of the words he used. This fact alone is a damning admission.

F. <u>Defendants do not Misrepresent Precedent on the Judicial Proceedings Privilege</u>.

While expressly acknowledging that they were not binding, Defendants correctly observed that the Utah Court of Appeals opinions they cited – the only Utah appellate decisions after the *Peterson* ruling from the Tenth Circuit to address the judicial proceedings privilege – have not recognized the "bad faith" exception to the judicial proceedings privilege for litigants (as opposed to attorneys). (Reply at 19-20, Dkt. 46 (citing *Rain Focus* and *Lavender*).)

Dunn states that the Court in *Lavender* "refused to apply the judicial proceedings privilege to shield a defendant who 'knowingly fil[ed] false documents,'" but he ignores that the court held that the judicial proceedings privilege did not apply because the documents were not filed "during or in the course of a judicial proceeding." 2025 UT App 47, ¶ 89.[4] In short, *Lavender* does not support Dunn's position. And in *Rain Focus*, the Utah Court of Appeals thoroughly examined the contours of the judicial proceedings privilege and only discussed/identified "excessive publication" as an exception thereto. 2023 UT App 32, ¶¶ 14-15, 528 P.3d 1221. Dunn cites to no decision by the Utah Court of Appeals or Utah Supreme Court that extends any other exception to the judicial proceedings privilege. (Motion at 4, Dkt. 52.)

G. <u>Dunn Merely Repeats his Malicious Prosecution and Defamation Arguments</u>.

Dunn's arguments related to his malicious prosecution and defamation claims in the proposed surreply are merely restatements of his previous arguments. (Compare Opp. at 9-10 with Prop Sur. At 6; see also Prop Sur. at 7-8.) Dunn's arguments have already been addressed by the fair and statutorily dictated briefing schedule – neither of which countenance giving Dunn

---

[4] Given that the actual cause of action was "slander of title" which necessarily means a person filed false documents, the court noted that assertion of any privilege would eviscerate this particular claim entirely. *Id*.

10

the last word simply because he "demands it." (*See* Motion to Dismiss at 23-35, Dkt. 19; *see also* Reply at 17-30.)

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Dunn's Motion and not consider Dunn's proposed surreply.

DATED this 15th day of July 2025.

                                      RAY QUINNEY & NEBEKER P.C.

                                      */s/ David B. Dibble*
                                      Rick Thaler
                                      David B. Dibble
                                      Katherine E. Priest

                                      *Attorneys for Defendants Delta Air Lines, Inc., Robert Banish, Kevin Miller, and Brian Cink*

# CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2025, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY** using the CM/ECF system of the District Court of the State of Utah which sent notification of such filing to:

>Tyler Green
>Matt Pociask
>Patrick Strawbridge
>**CONSOVOY MCCARTHY PLLC**
>tyler@consovoymccarthy.com
>matt@consovoymccarthy.com
>patrick@consovoymccarthy.com
>
>*Attorneys for Plaintiff*

/s/ Doris Van den Akker